THE STATE EX REL. BROWN, APPELLEE, *v.* HOOVER UNIVERSAL, INC.,

D.B.A. JOHNSON CONTROLS ET AL., APPELLANTS.

[Cite as *State ex rel. Brown v. Hoover Universal, Inc.,*

132 Ohio St.3d 520, 2012-Ohio-3895.]

*Workers' compensation—Voluntary abandonment of employment—Examination of the totality of the circumstances required—Judgment affirmed.*

(No. 2011-0127—Submitted June 19, 2012—Decided August 30, 2012.)

APPEAL from the Court of Appeals for Franklin County,

No. 10AP-21, 2010-Ohio-6174.

_____

**Per Curiam**.

{¶ 1}   Absent a return to other employment, an employee who voluntarily abandons his or her former position of employment cannot receive temporary total disability compensation ("TTC").   *State ex rel. Baker v. Indus. Comm.*, 89 Ohio St.3d 376, 380-381, 732 N.E.2d 355 (2000).   Employment discharge can constitute a voluntary abandonment when it is a consequence of behavior that the claimant willingly undertook. *State ex rel. Watts v. Schottenstein Stores Corp.*, 68 Ohio St.3d 118, 121, 623 N.E.2d 1202 (1993).   Voluntariness, however, can be imputed to a claimant's misconduct only when the misconduct arises from a violation of a written work rule that (1) clearly defined the prohibited conduct, (2) identified the misconduct as a dischargeable offense, and (3) was known or should have been known to the employee. *State ex rel. Louisiana-Pacific Corp. v. Indus. Comm.*, 72 Ohio St.3d 401, 403, 650 N.E.2d 469 (1995).

{¶ 2}   Appellee, LaRon Brown, was injured in 2003 while working for appellant Hoover Universal, Inc., d.b.a. Johnson Controls.   Five years later, Brown was fired for violating the company's attendance policy.   His termination

was later the basis for appellant Industrial Commission of Ohio's denial of his request for TTC. We must determine whether the commission properly analyzed the circumstances of his firing in concluding that his dismissal barred TTC.

{¶ 3} The attendance policy at issue gave nonprobationary employees such as Brown 16 hours of unpaid leave every three months. These hours were deposited into a "bank" and, with a supervisor's approval, could be used as needed. Generally, the exchange rate was one to one – an hour of bank time for an hour's absence. The use of bank time to cover illness, however, was different. When an illness resulted in consecutive days off, an employee would be charged only eight hours of time for the entire absence if the employee called in each day of his or her absence and produced a doctor's slip upon return.

{¶ 4} Because only portions of the policy were entered into the record, it is not known whether unused hours rolled over to the next quarter. It is clear, however, that employees were prohibited from using more bank hours than they had on account, and the policy specified that violators would be fired. Brown signed an acknowledgment form indicating that he had received a copy of the attendance policy, had read it, and understood its contents.

{¶ 5} In the first quarter of 2008, Johnson Controls charged the following withdrawals to Brown's bank-hour account: three hours on January 30, 2008; eight hours on January 31, 2008; eight hours on March 10, 2008; and eight hours on March 11, 2008. Because Brown had exceeded the number of hours that he had on account, Brown was fired. In a grievance filed with his union, Brown apparently claimed that Johnson Controls had miscalculated the number of bank hours used, but he did not prevail.

{¶ 6} Brown later moved for TTC, alleging that after his dismissal, he had become temporarily and totally disabled by injuries suffered while working. At the commission hearings that followed, the character of Brown's termination was debated. Johnson Controls maintained that the dismissal constituted a

2

voluntary abandonment of the former position of employment that barred TTC. Brown's discharge, it argued, comported with both *Watts*, 68 Ohio St.3d 118, 623 N.E.2d 1202, and *Louisiana-Pacific*, 72 Ohio St.3d 401, 650 N.E.2d 469, because it arose from Brown's violation of an acknowledged written work rule that identified excessive bank-hour usage as a dischargeable offense.

{¶ 7} Brown denied that his discharge amounted to a voluntary abandonment and challenged his employer's reliance on *Watts* and *Louisiana-Pacific*. He insisted that he had not violated the work rule at issue because his withdrawals had in fact not exceeded his account balance. Brown claimed that Johnson Controls should not have charged three hours to his account on January 30 because he was at a company-ordered medical exam related to his claim. He also argued that he should have been charged just eight hours total for March 10 and 11—not Johnson Controls' 16—because those sick days were consecutive and the C-84 form requesting TTC, signed by a doctor, served as the required doctor's slip. Return of those 11 hours to Brown's bank would bring his quarterly withdrawal to 16, equal to the number of hours he apparently had in his account.[1] Johnson Controls did not challenge Brown's claim that his account should not have been charged for the January 30 medical exam, but it stood by its assessment of 16 hours for March 10 and 11.

{¶ 8} Brown alternatively tried to disavow understanding the bank-hour protocol. Relying on Brown's signed acknowledgment that he had read and understood the attendance policy, a commission staff hearing officer rejected this argument and devoted her discussion to that issue. There was no mention of the eight disputed hours arising from Brown's consecutive-day absence in March; the

---

1. Evidence of record does not specify how many hours that Brown had in his account, but the tenor of his argument—as well as that of Johnson Controls—suggests that Brown had a balance of 16 hours.

order simply concluded that Brown had violated the rule in question. Further appeal was refused.

{¶ 9} Brown filed a complaint in mandamus in the Tenth District Court of Appeals, alleging that the commission had abused its discretion in finding that his termination barred TTC. The magistrate for the court of appeals found that the commission had an affirmative obligation in every termination case to evaluate whether just cause for discharge had existed and recommended that the cause be returned to determine whether Brown's bank-hour withdrawals had been properly calculated. The court of appeals adopted the magistrate's recommendation. The court held that the deliberate misconduct necessary to support a finding of voluntary abandonment could not be imputed to Brown unless it was clear that he had actually violated the policy.

{¶ 10} Johnson Controls now appeals to this court as of right.

{¶ 11} An employment separation is deemed voluntary when it is initiated by the claimant for reasons unrelated to the industrial injury. *State ex rel. Rockwell Internatl. v. Indus. Comm.*, 40 Ohio St.3d 44, 45, 531 N.E.2d 678 (1988). Although it is the employer that formalizes the employment separation when a worker is fired, dismissal is nevertheless considered employee-initiated, and hence voluntary, when it arises from the employee's decision to engage in conduct that he or she knows will result in termination. *Watts*, 68 Ohio St.3d at 121, 623 N.E.2d 1202; *Louisiana-Pacific*, 72 Ohio St.3d at 403, 650 N.E.2d 469. In other words, when a claimant voluntarily misbehaves, he or she tacitly assents to the consequences. *State ex rel. Galligan v. Indus. Comm.*, 124 Ohio St.3d 233, 2010-Ohio-3, 921 N.E.2d 231, ¶ 11.

{¶ 12} Brown argues that his discharge cannot be considered voluntary because he did not engage in prohibited conduct or did not do so knowingly. At his commission hearing, Brown asserted that his bank-hour withdrawals exceeded his available balance only because Johnson Controls improperly charged him with

4

16 hours, rather than eight, for consecutive sick days. This argument, in turn, raised the issue of whether a previously submitted C-84 disability form was a valid doctor's excuse for purposes of the consecutive-sick-day exception to the bank-hour policy.

{¶ 13} The issue of the C-84 form was critical for two reasons. First, if the C-84 was found to be a valid doctor's excuse, it would support Brown's assertion that he satisfied the requirements of the consecutive-sick-day exception and should have been charged just eight hours for this absence. This determination would affect Johnson Controls' bank-hour calculation. Second, even if the C-84 were found to be inadequate, a good-faith belief that it satisfied the rule's requirement could support Brown's alternative claim that his violation of the rule was neither knowing nor deliberate.

{¶ 14} The hearing officer, however, discussed none of this in her order. The omission is unacceptable. In *State ex rel. Smith v. Superior's Brand Meats, Inc.*, 76 Ohio St.3d 408, 411, 667 N.E.2d 1217 (1996), we expressly "recognize[d] the great potential for abuse in allowing a simple allegation of misconduct to preclude temporary total disability compensation. We therefore find it imperative to carefully examine the totality of the circumstances when such a situation exists." *See also State ex rel. Pretty Prods., Inc. v. Indus. Comm.*, 77 Ohio St.3d 5, 7, 670 N.E.2d 466 (1996); *State ex rel. McKnabb v. Indus. Comm.*, 92 Ohio St.3d 559, 561, 752 N.E.2d 254 (2001); *State ex rel. Daniels v. Indus. Comm.*, 99 Ohio St.3d 282, 2003-Ohio-3626, 791 N.E.2d 440, ¶ 10-12. Because such an examination did not take place, a return to the commission for further consideration and amended order is warranted.

{¶ 15} Accordingly, we hereby issue a limited writ of mandamus that vacates the commission's order and returns this cause to it for further consideration and amended order.

{¶ 16} The judgment of the court of appeals is affirmed.

Judgment affirmed.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and McGEE BROWN, JJ., concur.

_____

Gallon, Takacs, Boissoneault & Shaffer Co., L.P.A. and Theodore A. Bowman, for appellee.

Bugbee & Conkle, L.L.P., Gregory B. Denny, and Mark S. Barnes, for appellant.

_____