THE STATE EX REL. ROBINSON, APPELLANT, *v.* INDUSTRIAL COMMISSION
OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. Robinson v. Indus. Comm.,* 138 Ohio St.3d 471,
2014-Ohio-546.]

*Workers' compensation—Mandamus—Temporary-total-disability compensation—
Eligibility—Claimant terminated for cause—Termination from employment
considered voluntary abandonment when termination arises from violation of
written rule known to be dischargeable offense—Claimant who has voluntarily
abandoned workforce not eligible for compensation—Writ denied.*

(No. 2012-1827—Submitted September 10, 2013—Decided February 20, 2014.)

APPEAL from the Court of Appeals for Franklin County, No. 11AP-900,
2012-Ohio-4372.

_____

**Per Curiam**.

{¶ 1}  Appellant, Shelby K. Robinson, appeals from the judgment of the court of appeals denying her request for a writ of mandamus.  The court of appeals held that the Industrial Commission did not abuse its discretion by denying Robinson temporary-total-disability compensation on the basis that Robinson's discharge from employment for violating written workplace rules had been a voluntary abandonment.

{¶ 2}  For the reasons that follow, we affirm.

{¶ 3}  Robinson had been employed as a licensed practical nurse ("LPN") with Progressive Parma Care Center, L.L.C./Parma Care Nursing and Rehabilitation ("Parma Care") since 1995.  When hired, she was given a written job description that set forth her job duties and responsibilities.  She also received a copy of the employee handbook.

{¶ 4}  During her tenure at Parma Care, Robinson was disciplined on several occasions.  On January 18 and February 29, 2008, she was written up for violating work

rules. On the February discipline form, Robinson acknowledged that she had been warned that any future violations would result in her termination.

**{¶ 5}** On April 10, 2008, Robinson was injured at work. Her workers' compensation claim was allowed for "sprain lumbar; herniated disc L3-L4: herniated disc with free fragment at L5-S-1 with right radiculopathy." As a result, she was moved to light-duty work.

**{¶ 6}** On April 15, 2008, a state surveyor[1] reported to Parma Care that Robinson had failed to communicate a resident's dietary-order change on April 11, 2008, and when she was asked to correct her failure, Robinson wrote the change on the back of an alcohol pad and handed it to the dietary manager without noting the resident's name. The state surveyor also reported that Robinson had failed to check a resident's feeding tube that was infusing faster than ordered by the physician. The following day, April 16, 2008, the director of nursing prepared the necessary paperwork to terminate Robinson.

**{¶ 7}** Robinson was not scheduled to work on April 16 or 17, 2008. Her supervisor called her on each of those days and each time left a telephone message asking Robinson to call. Robinson returned the call on April 18, but refused her supervisor's request for a personal meeting. Eventually, Parma Care sent Robinson a letter by certified mail dated April 30, 2008, informing her that she had been terminated for cause effective April 16, 2008.

**{¶ 8}** In the meantime, Robinson visited a medical clinic on April 17, 2008, and a nurse practitioner certified that Robinson was medically capable of continuing light-duty work. On April 21, 2008, after Robinson had talked with her supervisor, she again visited the medical clinic. At this visit, a physician certified that Robinson was temporarily and totally disabled from all employment, including light duty, beginning on the date of her injury, April 10, 2008.

---

1. Parma Care's director of nursing testified that state surveyors regularly inspect the Parma Care facility to ensure that proper procedures and state regulations are being followed.

**{¶ 9}** A staff hearing officer denied Robinson's request for temporary-total-disability compensation. The hearing officer determined that Robinson had been terminated from her employment effective April 16, 2008, for violating a written work rule. The hearing officer concluded that this termination was a consequence of Robinson's own misconduct. Thus, she had voluntarily abandoned her employment, making her ineligible for benefits. In addition, the hearing officer concluded that the medical evidence did not support Robinson's claim that she had been temporarily and totally disabled at the time of her termination on April 16, 2008.

**{¶ 10}** Robinson filed a complaint for a writ of mandamus, alleging that the commission had abused its discretion when it denied her request for temporary-total-disability compensation. The court of appeals denied the writ. *State ex rel. Robinson v. Indus. Comm.*, 10th Dist. Franklin No. 11AP-900, 2012-Ohio-4372.

**{¶ 11}** This cause is now before the court on an appeal as of right.

**{¶ 12}** An employee who voluntarily abandons his or her employment for reasons not related to the industrial injury cannot receive temporary-total-disability compensation. *State ex rel. Brown v. Hoover Universal, Inc.*, 132 Ohio St.3d 520, 2012-Ohio-3895, 974 N.E.2d 1198, ¶ 11; *State ex rel. Rockwell Internatl. v. Indus. Comm.*, 40 Ohio St.3d 44, 531 N.E.2d 678 (1988). Although being fired is generally considered an involuntary separation from employment, when the discharge arises from the employee's decision to engage in conduct that he or she knows will result in termination, it may be considered a voluntary abandonment. *State ex rel. Brown* at ¶ 11; *State ex rel. Watts v. Schottenstein Stores Corp.*, 68 Ohio St.3d 118, 121, 623 N.E.2d 1202 (1993). "This derives from the principle that an individual 'may be presumed to tacitly accept the consequences of his voluntary acts.'" *State ex rel. Valley Interior Sys., Inc. v. Indus. Comm.*, 118 Ohio St.3d 418, 2008-Ohio-2703, 889 N.E.2d 993, ¶ 9, quoting *State ex rel. Ashcraft v. Indus. Comm.,* 34 Ohio St.3d 42, 44, 517 N.E.2d 533 (1987).

{¶ 13} Employment discharge is a voluntary abandonment only when the discharge arises from a violation of a written work rule that (1) clearly defined the prohibited conduct, (2) identified the misconduct as a dischargeable offense, and (3) was known or should have been known to the employee. *State ex rel. Louisiana-Pacific Corp. v. Indus. Comm.*, 72 Ohio St.3d 401, 403, 650 N.E.2d 469 (1995).

{¶ 14} Robinson argues that Parma Care did not satisfy the *Louisiana-Pacific* test because it did not identify a written work rule that clearly defined the prohibited conduct for which Robinson was terminated.

{¶ 15} The staff hearing officer determined that Robinson failed to refute Parma Care's assertion that Robinson knew that her actions violated company policies and rules and could result in termination. The hearing officer noted that Robinson had been provided with a copy of the company handbook that set forth policies, rules, and disciplinary procedures. Moreover, on the February 29, 2008 employee-discipline form, Robinson acknowledged that her violation of another workplace rule would result in termination.

{¶ 16} The appellate court determined that the commission did not abuse its discretion when it concluded, based on the evidence presented, that Robinson's discharge constituted a voluntary abandonment. We agree that Robinson's duties as an LPN and as an employee of Parma Care were sufficiently identified in the employee handbook and her job description so that she was on notice that her actions, such as the failure to record a changed dietary order and communicate it to the dietary department and the failure to attend to a feeding tube, could result in termination. Thus, her discharge constituted a voluntary abandonment of employment.

{¶ 17} Next, Robinson argues that Parma Care's timing of her termination demonstrates that it was a pretext in order to avoid paying her temporary-total-disability compensation. Robinson maintains that notwithstanding the telephone conversation with her supervisor on April 18, 2008, Parma Care did not terminate her until the April 30, 2008 letter, after it had learned of her disability.

4

**{¶ 18}** The appellate court noted that the stipulated record demonstrated that Robinson's supervisor called her on April 16 and 17 and left messages asking Robinson to call her, but that Robinson did not return the call until April 18. The court further noted that after Robinson refused to personally meet with her supervisor, Parma Care sent the termination letter on April 30. The appellate court determined that this evidence supported the commission's decision that Parma Care terminated Robinson on April 16, prior to any physician certifying that she was temporarily and totally disabled. We agree that Robinson failed to demonstrate that Parma Care's decision to terminate her was a pretext to avoid payment of compensation.

**{¶ 19}** A court's role in reviewing a mandamus action is to determine whether there is some evidence supporting the commission's decision to deny temporary-total-disability compensation. *State ex rel. Burley v. Coil Packing, Inc.*, 31 Ohio St.3d 18, 508 N.E.2d 936 (1987). Here, the court of appeals determined, and we agree, that the commission's order was supported by some evidence that Robinson had voluntarily abandoned her employment as a result of her termination on April 16 for violating a written work rule and that the commission did not abuse its discretion when it denied Robinson compensation for temporary total disability.

**{¶ 20}** We affirm the judgment of the court of appeals.

Judgment affirmed.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, and KENNEDY, JJ., concur.

O'NEILL, J., dissents.

FRENCH, J., not participating.

_____

**LANZINGER, J., concurring.**

**{¶ 21}** The dissent is incorrect in suggesting that by applying our precedent on voluntary abandonment, we have injected the concept of fault into Ohio's workers' compensation law. But it cannot be said that because Robinson was fired, she was

uncompensated for her workplace injury. Robinson's workers' compensation claim was allowed, and she was entitled to participate in the workers' compensation fund—all without regard to fault. She was entitled to payment of the medical expenses related to the injury, and, in fact she received medical treatment on April 10, 2008, the day of her injury, and then was released to light-duty work. Her employer accommodated her workplace restriction.

{¶ 22} This case relates to a request for additional compensation because Robinson alleges that she was temporarily and totally disabled. To qualify for temporary-total compensation, she was required to show that she was medically incapable of returning to her former position of employment and that it was her injury, rather than the fact that she was fired, that caused her loss of earnings. R.C. 4123.56; *State ex rel. Cline v. Abke Trucking, Inc.,* 137 Ohio St.3d 557, 2013-Ohio-5159, 1 N.E.3d 409, ¶ 13.

{¶ 23} We have explained that an employee who is temporarily and totally disabled as a result of a workplace injury is entitled to compensation for lost earnings during the period of disability while the injury heals. *State ex rel. Ashcraft v. Indus. Comm.*, 34 Ohio St.3d 42, 44, 517 N.E.2d 533 (1987). But if the employee's own actions (based on reasons unrelated to the injury) prevent a return to the job, then the employee is not entitled to temporary-total-disability benefits, since it is the employee's own action—not the injury—that caused the loss of earnings. *State ex rel. McCoy v. Dedicated Transport, Inc.*, 97 Ohio St.3d 25, 2002-Ohio-5305, 776 N.E.2d 51.

{¶ 24} Thus, the principle of voluntary abandonment of employment operates to bar the receipt of temporary-total benefits when an employee's own action prevents a return to the former position of employment. *State ex rel. Louisiana-Pacific Corp. v. Indus. Comm.,* 72 Ohio St.3d 401, 650 N.E.2d 469 (1995). The principle does not, however, mean that the injured employee is completely uncompensated due to fault.

{¶ 25} It is important to focus on the type of workers' compensation benefit that is being requested by a claimant. In this matter, the majority opinion details why the

commission did not abuse its discretion in denying temporary-total-disability compensation to Robinson, and I concur in all respects.

O'CONNOR, C.J., concurs in the foregoing opinion.

_____

**O'NEILL, J., dissenting.**

{¶ 26} I dissent from the majority's holding in this case. It is time for this court to restate its support for the Ohio Workers' Compensation Act and its fundamental proposition that injuries in the workplace are to be evaluated on a no-fault basis.

{¶ 27} As demonstrated in this case and in *State ex rel. Cline v. Abke Trucking, Inc.,* 137 Ohio St.3d 557, 2013-Ohio-5159, 1 N.E.3d 409, the Industrial Commission continues to ignore the fundamental principle that the concept of fault has no place in Ohio's system of workers' compensation. The commission abused its discretion by denying Shelby Robinson temporary-total-disability compensation, and the court of appeals erred when it denied her request for a writ of mandamus. Ms. Robinson's claim for compensation was allowed, which is an administrative acknowledgment that she was injured on the job on April 10, 2008. It cannot be stressed strongly enough that it is irrelevant whether she was terminated for cause on April 16, 2008, April 30, 2008, or any other day for that matter.

{¶ 28} The record before this court is that Ms. Robinson was injured at work prior to her termination and that her doctor certified that she was not able to work for this employer or any other employer for the time in question. As a matter of law, Ms. Robinson's performance at work is irrelevant to the question whether she is entitled to compensation and payment of medical bills as a result of her workplace injury. Parenthetically, I would note that the injury in question here is a low-back injury, which is common for health-care workers and one that does not go away instantly. Work performance and the constitutional right to be compensated for workplace injuries are two totally separate and unrelated topics.

{¶ 29} "Voluntary abandonment of employment" is a relatively new and unprecedented judicial construct that is eroding Ohio's constitutionally guaranteed no-fault system, and the majority's decision takes the court further down the wrong path.

{¶ 30} Ohio's workers' compensation system is a no-fault system established in 1912 by an amendment to the Ohio Constitution. *See* Article II, Section 35. It is codified in great detail in the Ohio Revised Code. Prior to the enactment of the Workers' Compensation Act, injured workers had the right to sue employers in tort but could only recover damages if they were successful in showing employer negligence. The suits were time-consuming and costly to defend, driving some employers out of business.

{¶ 31} The Workers' Compensation Act is a compromise between the interests of injured workers and the interests of employers. The cornerstone of Ohio's system is that both sides surrender certain rights to gain certain protections. Injured workers relinquish their common-law access to the courts and their right to recover damages if they are injured on the job. In return, they gain the right to be compensated for medical bills and loss of earnings from a multibillion-dollar fund supplied by employers, who contribute a percentage of payroll in a predictable and fair process. Employers relinquish their common-law defenses and, in return, receive an ironclad assurance that they cannot be sued for workplace injuries. It is a system of mutual compromise. *Blankenship v. Cincinnati Milacron Chems., Inc.,* 69 Ohio St.2d 608, 614, 433 N.E.2d 572 (1982). "Award is made for all kinds and characters of injuries except those self-inflicted, and has no relation to common-law negligence. It is neither an award of damages nor the imposition of a penalty. It recognizes the fact that the risk of injury or death is an incident of employment in industry * * *." *State ex rel. Crawford v. Indus. Comm.*, 110 Ohio St. 271, 275, 143 N.E. 574 (1924).

{¶ 32} In *State ex rel. Ashcraft v. Indus. Comm.,* 34 Ohio St.3d 42, 517 N.E.2d 533 (1987), this court held that a claimant receiving temporary-total-disability compensation forfeits his right to continue receiving compensation when he becomes

incarcerated because he has voluntarily abandoned the workforce. This judicially created concept of voluntary abandonment was later expanded and applied to circumstances in which an injured worker is terminated following the injury. *State ex rel. Louisiana-Pacific Corp. v. Indus. Comm.,* 72 Ohio St.3d 401, 650 N.E.2d 469 (1995). In *Louisiana-Pacific,* this court held that an injured employee who is fired is barred from receiving temporary-total-disability compensation when the employer can show that the worker was terminated for violating a written work rule that (1) clearly defined the prohibited conduct, (2) had been previously identified by the employer as a dischargeable offense, and (3) was known or should have been known to the employee. *Id.* at 403.

**{¶ 33}** This case presents a great opportunity for this court to disconnect employee fault from injured-worker benefits. Instead, the majority goes further and upholds the Industrial Commission, finding that Ms. Robinson had voluntarily abandoned her employment within the meaning of *Louisiana-Pacific* because her duties were sufficiently identified in the employee handbook and her job description. She was therefore barred from receiving workers' compensation benefits. This entire line of reasoning is totally irrelevant and does not shed a single ray of light on the question whether the employee was injured on the job. It is important to note that the stated reason for termination had nothing whatsoever to do with employee safety.

**{¶ 34}** The test generated by this court in *Louisiana-Pacific* and expanded here leaves Ms. Robinson's workplace injury uncompensated *despite the fact that her claim was allowed.* So what are we saying here? That only good employees will be compensated for an injury on the job? That is not the law in Ohio. It is cases like these that put employers and injured workers in an unnecessarily adversarial position. This is contrary to Ohio's no-fault system of workers' compensation. Commission hearings cannot and should not become forums for deciding whether the claimant was fired for just cause. Eligibility for workers' compensation and the quality of job performance are two distinct and completely unrelated subjects. I dissent.

_____

Agee, Clymer, Mitchell & Laret and Robert M. Robinson, for appellant.

Critchfield, Critchfield & Johnston, Ltd., and Susan E. Baker, for appellee Progressive Parma Care Center, L.L.C./Parma Care Nursing and Rehabilitation.

Michael DeWine, Attorney General, and Sandra E. Pinkerton, Assistant Attorney General, for appellee Industrial Commission.

_____