[Cite as *State ex rel. Jones v. Indus. Comm.*, 2014-Ohio-1528.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel.<br>Loretta Jones, | : | |
| | : | |
| Relator, | | |
| | : | No. 13AP-241 |
| v. | | |
| | : | (REGULAR CALENDAR) |
| Industrial Commission of Ohio and<br>Mill Run Care Center, | : | |
| | | |
| Respondents. | : | |

D E C I S I O N

Rendered on April 10, 2014

*Law Office of Thomas Tootle Co.,* and *Thomas Tootle*, for relator.

*Michael DeWine*, Attorney General, and *Andrew Alatis*, for respondent Industrial Commission of Ohio.

*Dinsmore & Shohl, LLP, Christen S. Hignett* and *Brett L. Miller*, for respondent Mill Run Care Center.

IN MANDAMUS
ON OBJECTION TO THE MAGISTRATE'S DECISION

TYACK, J.

{ 1} Relator, Loretta Jones, has filed this action in mandamus seeking to obtain temporary total disability ("TTD") payments for her injuries suffered while she worked at Mill Run Care Center.

{ 2} In accord with Loc.R. 13(M) of the Tenth District Court of Appeals, the case was referred to a magistrate of this court to conduct appropriate proceedings. The parties

stipulated the pertinent evidence and filed briefs. The magistrate then issued a magistrate's decision, appended hereto, which contains detailed findings of fact and conclusions of law. The magistrate's decision includes a recommendation that we deny the request for a writ.

{¶ 3} Counsel for Jones has filed an objection to the magistrate's decision. Counsel for respondent Industrial Commission of Ohio ("commission") has filed a memorandum in response. Her former employer, respondent Mill Run Care Center, has also filed a memorandum in response. The case is now before the court for a full, independent review.

{¶ 4} Jones was originally injured in October 1998. Her workers' compensation claim was originally recognized for back injuries. Over 12 years later, her claim was expanded to include "major depression, severe, without psychotic features." In the meantime, Mill Run Care Center had fired Jones because of a claim she had slapped a resident of the care center. Jones has always denied the slapping allegation.

{¶ 5} In 2004, Jones had been provided a handbook which indicated that such conduct could result in being fired. When Jones applied for TTD after her psychological condition had been recognized, Mill Run Care Center argued that Jones had voluntarily abandoned her employment.

{¶ 6} The staff hearing officer ("SHO") who initially heard the application noted: The Injured Worker has presented significant documentation which argues

that the discharge was unjust.

{¶ 7} The SHO essentially allowed the Mill Run Care Center to decide whether the firing constituted a voluntary abandonment of employment by Jones. If the person was fired based upon the employer's finding that a dischargeable work rule had been violated, the SHO found that a voluntary abandonment of employment existed.

{¶ 8} Counsel for Jones pursued an action in mandamus which resulted in an agreed remand of the application for a de novo review by a different SHO. The second SHO also found that Jones had voluntarily abandoned her employment, although the paperwork indicated that a different employee, Loretta Battle, did the striking. Again, the employer's decision that Jones should be fired on the same day was deemed decisive. Apparently a relative of a resident claimed that Jones struck a resident. The family

member's statement does not extensively deal with the family member's ability to distinguish between the two Lorettas. The family member did not testify before the commission. As noted in our magistrate's decision, the Ohio Bureau of Employment Services allowed Jones unemployment benefits based upon a finding that no just cause for her firing had been demonstrated. Jones testified under oath that she did not strike the resident.

{¶ 9} Jones found a new job but also discovered that her conditions recognized in her industrial claim prevented her from continuing that job, especially her back problem. The SHO who conducted the second hearing found that the new job "does not represent a good faith return to gainful employment and did not constitute gainful employment."

{¶ 10} Based upon the record before us, we cannot find that Jones has voluntarily abandoned employment. First, there is strong reason to believe that Jones did not engage in conduct which put her on notice that she would be fired. She had many years of exemplary patient care. She always denied striking a patient. Mill Run Care Center's paperwork said that a Loretta Battle was being fired for striking a patient. The family member who provided a statement never testified under oath so it could be known the family member's ability to distinguish one Loretta from the other Loretta. Jones testified under oath that she did not strike anyone. The Ohio Bureau of Employment Services concluded that Jones was not fired for just cause, after a contested proceeding. On this basis alone, Jones cannot be seen to have abandoned her job at Mill Run Care Center. Being fired does not in and of itself constitute abandoning a job.

{¶ 11} Further, Jones went back to work after being fired by Mill Run Care Center. There is no question that she was paid for her time on the new job. Thus, it was both gainful and constituted employment.

{¶ 12} There is no magic number of days that a person must work in pain before saying "I can't do this job." Jones was being told by mental health professionals that she had restrictions which prevented her from working at all. Still she sought out and obtained another job. She clearly did not abandon employment completely or she could have used her depression as an excuse for not working.

{¶ 13}   Looking at the totality of the circumstances, no evidence supports a finding that Jones voluntarily abandoned employment in general.  We sustain the objection to the magistrate's decision.

{¶ 14}   We adopt the findings of fact in the magistrate's decision, but not the conclusions of law.  As a result, we grant a writ of mandamus compelling the commission to vacate its denial of TTD for Jones and compelling the commission to grant the compensation.

*Objection sustained; writ granted.*

CONNOR, J., concurs.
SADLER, P.J., dissents.

SADLER, P.J., dissenting.

{¶ 15}   The majority focuses on whether relator's termination from employment with Mill Run Care Center constituted a voluntary abandonment of her employment. However, as relator set forth in her objection to the magistrate's decision, "[t]he central issue to this action is whether [her] two week return to work from December 3, 2012 to December 14, 2012" constitutes gainful employment.  Therefore, I disagree with the analysis presented by the majority.

{¶ 16}   Additionally, for the reasons set forth in the magistrate's decision, I believe the commission did not abuse its discretion in determining that relator did not return to gainful employment and, therefore, had not re-established entitlement to an award of TTD compensation.  Accordingly, I would overrule relator's objection to the magistrate's decision, adopt the decision of the magistrate, and deny the requested writ of mandamus. Because the majority does otherwise, I respectfully dissent.

———————————

**A P P E N D I X**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel.<br>Loretta Jones, | : | |
| | : | |
| Relator, | | |
| | : | No.  13AP-241 |
| v. | | |
| | : | (REGULAR CALENDAR) |
| Industrial Commission of Ohio<br>and Mill Run Care Center, | : | |
| | | |
| Respondents. | : | |

**M A G I S T R A T E ' S   D E C I S I O N**

**Rendered on November 27, 2013**

*Law Office of Thomas Tootle,* **and** *Thomas Tootle,* **for relator.**

*Michael DeWine,* **Attorney General, and** *Andrew Alatis,* **for respondent Industrial Commission of Ohio.**

*Dinsmore & Shohl, LLP, Christen S. Hignett* **and** *Brett L. Miller,* **for respondent Mill Run Care Center.**

IN MANDAMUS

{¶ 17}  Relator, Loretta Jones, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's motion for temporary total disability ("TTD") compensation on grounds that she had voluntarily abandoned her employment and had not returned to gainful employment, and ordering the commission to find that she is entitled to that compensation.

Findings of Fact:

{¶ 18} 1. Relator sustained a work-related injury on October 5, 1998 and her workers' compensation claim was allowed for the following physical conditions:

> Lumbosacral strain/sprain; aggravation of pre-existing L5-S1 disc displacement.

{¶ 19} 2. On June 3, 2010, relator was terminated from her job with respondent Mill Run Care Center. It was alleged that relator had slapped a resident.

{¶ 20} 3. Following a March 18, 2011 hearing before a district hearing officer ("DHO"), relator's claim was additionally allowed for the psychological condition: "major depression, severe, without psychotic features."

{¶ 21} 4. On June 16, 2011, relator filed a motion seeking an award of TTD compensation beginning September 28, 2010 and continuing.

{¶ 22} 5. Relator's motion was heard before a DHO on January 17, 2012. The DHO denied relator's request after finding that she had voluntarily abandoned her employment when she was terminated. Specifically, the DHO stated:

> It is the order of the District Hearing Officer that payment of temporary total disability compensation from 09/28/2010 through 01/17/2012, based upon the allowed psychological condition, is denied. The District Hearing Officer finds that the Injured Worker's termination on 06/30/2010 constituted a voluntary abandonment of her employment that precludes the payment of temporary total disability compensation from 09/28/2010 forward. The District Hearing Officer finds that the elements of State ex rel. Louisiana-Pacific v. Indus. Comm. (1995), 72 Ohio St.3d 401, have been satisfied.
>
> The Injured Worker was terminated on 06/03/2010 for slapping a resident. Although the associate discipline conference form dated 06/03/2010 identifies a co-worker, Loretta Battle, rather than the Injured Worker, the Injured Worker does not dispute that she was discharged on that date for the same offense. The conduct of being physically abusive toward a resident was identified as being a dischargeable offense on page 18 of the employer's associate handbook. The Injured Worker's knowledge of that policy is imputed from her signature on the handbook receipt dated 01/06/2004, and from her signature on the orientation attendance sheet dated 01/06/2004 which indicates that rules of conduct were among the topics covered.

> There is no evidence that the Injured Worker re-entered the workforce following her termination. Accordingly, payment of the requested period of temporary total disability compensation is denied.

{¶ 23} 6. Relator appealed and disputed that she had ever slapped a resident and attached documentation from the Ohio Department of Job and Family Services ("ODJFS") demonstrating that her application for unemployment compensation had been granted based on a finding that she had been discharged without good cause.

{¶ 24} 7. Relator's appeal was heard before a staff hearing officer ("SHO") on March 12, 2012. The SHO affirmed the prior DHO order, stating:

> Temporary Total Disability Compensation, which is being sought based upon the allowed psychological conditions, remains denied for the period 09/28/2010 through 01/17/2012 (the date of the District Hearing Officer Hearing). The Staff Hearing Officer affirms the District Hearing Officer's conclusion that payment of this compensation is barred by reason of a voluntary abandonment of the former position of employment under the rule of State ex rel. Louisiana Pacific vs. Indus. Comm., (1995), 72 Ohio St. 3rd 401. The Injured Worker was terminated on 06/03/2010 for slapping a resident. Documentation in the claim file demonstrates that the Injured Worker had been advised in writing that this was a dischargeable offense. This is demonstrated by the Injured Worker's signature on the Receipt of Handbook dated 01/06/2004, together with her signature on the Orientation Attendance Sheet of the same date.
>
> The Injured Worker has presented significant documentation which argues that the discharge was unjust. The Industrial Commission has no role in determining if the employer acted with significant information or otherwise properly in making such a discharge, only in determining if it was in response to what they found to be a violation of a written work rule of which the Injured Worker was aware and which unambiguously identified the conduct as a dischargeable offense.
>
> * * *

Finally, although the Injured Worker has sought re-employment, she has not been re-employed since this discharge.

{¶ 25} 8. Relator's appeal was refused by order of the commission mailed April 3, 2012.

{¶ 26} 9. Relator filed a mandamus action in this court which ultimately resulted in the following stipulation of dismissal:

In accordance with Civ.R. 41(A)(1)(b), the parties hereby stipulate that this action is dismissed with prejudice. Further, the claim is to be referred to the Hearing Administrator to schedule a hearing de novo before a Staff Hearing Officer, other than previous Staff Hearing Officer who issued the order dated March 12, 2012, to redetermine the merits of the application for temporary total disability compensation filed June 3, 2011.

(Emphasis sic.) *See State ex rel. Jones v. Indus. Comm.,* 10th Dist. No. 12AP-591 (Oct. 29, 2012 JED).

{¶ 27} 10. In accordance with the stipulation of dismissal, relator's motion for TTD compensation was scheduled for de novo hearing before a different SHO.

{¶ 28} 11. This hearing was held on December 18, 2012 and resulted in an order modifying the DHO order from the January 17, 2012 hearing. The SHO again denied the request for TTD compensation beginning November 28, 2010. The SHO first found that relator had been terminated from her employment on June 3, 2010. The SHO discussed, in great detail, the reasons for relator's termination, as well as relator's documentation that: (a) she did not commit the offense as indicated, and (b) she was a good employee and should not have been terminated, stating:

The Staff Hearing Officer finds that Injured Worker was terminated from her employment on 06/03/2010 for violating a written work rule and that pursuant to State ex rel. Louisiana-Pacific v. Indus. Comm. (1995), 72 Ohio St. 3d 401, the Injured Worker is found to have "voluntarily abandoned her employment."

It is noted at the District Hearing Officer hearing that there was a discussion regarding the confusion between a co-worker named Loretta Battle and the Injured Worker. The

Employer's termination letter refers to a Loretta Battle, but there was no dispute at today's hearing that the termination was related to the Injured Worker. The Injured Worker at hearing disputed that she ever slapped a resident, but she did not dispute that she was fired for that reason. Accordingly, no true mistaken identity is found, just an inadvertent error.

The Injured Worker's handbook does state that an employee may be subject to immediate termination under the following circumstances: "Being verbally and/or physically abusive toward a resident /client, associate or member of the community." The Injured Worker was fired pursuant to striking a resident.

The Injured Worker signed a statement on 01/06/2004 indicating that she had received a copy of the handbook, which stated that she could be fired for striking a resident. The Injured Worker knew or should have known that she could be immediately terminated if she she [sic] physically abused a resident.

The Injured Worker argued at hearing that pursuant to the Employee Handbook that she was entitled to three written notices before she could be fired pursuant to the Employee Handbook. The Injured Worker points to page three of the handbook which refers to standards of conduct. It states on this page: "Upon the third offense, the associate shall receive a written notice that is a final warning or, the associates employment may be terminated, depending on the nature of the offense and the disciplinary actions that have previously been taken."

In this case, the Employer has provided a record of two previous offenses, one on 03/26/208 [sic] and another on 05/21/2010. The above stated section states that the associate my [sic] receive written notice or may be terminated. The Injured Worker states that the rule requires a third written notice before being fired, but the language of the above quoted procedure states that the Injured Worker may be terminated without a written notice, depending on the nature of the offense.

More importantly, the rule book states that the associate may be fired immediately for physical abuse of a client. Accordingly, if the Injured Worker did slap a client, the

Injured Worker did violate a rule where she was subject to immediate termination.

It is noted that the Injured Worker in this case denies that she ever physically abused any client. In State ex rel. Brown v. Hoover [U]niversal, Inc. 132 Ohio St.3d 520, 2012-Ohio-6174, [t]he Ohio Supreme Court held that the deliberate misconduct at issue to support the voluntary abandonment could not be imputed to the Injured Worker unless it was clear that the Injured Worker had actually violated the policy. Accordingly, an examination of the circumstances of the alleged event for which the Injured Worker was fired must be examined.

There is a 07/14/2010 statement on record on file from a Sarah Netler, who identifies herself as a family member of a resident. She states that she witnessed the Injured Worker slapping a resident. This statement is found to support a finding that the Injured Worker was physically abusive towards a resident.

The Injured Worker does not dispute a version of the events that are recorded above. The Injured Worker testified at hearing that one resident struck another resident and that she put her arm on the offending resident and escorted that resident to another table. The Injured Worker's testimony was considered, but it is concluded that the Injured Worker did slap the resident. It seems unlikely that a family member would have reported the event unless it actually happened. The fact that the Injured Worker remembers the incident, although her version of events does not include any physical abuse of a resident, supports a conclusion that the event occurred.

There are various written testimonials on file that support a conclusion that the Injured Worker generally did do a good job when interacting with the residents, but the only event under review at this hearing is the one time alleged slapping of a resident. The Injured Worker's overall performance may be a mitigating circumstance for the Employer to consider, but it is not a factor in this evaluation. The only consideration here is whether the Injured Worker was fired for violating a written work rule and if the Injured Worker was aware of the possible circumstances of violating that written work rule.

The Injured Worker worked with individuals that suffer from dementia. Working with these residents undoubtedly presented some challenges. However, the Employer required that its associates not be physically abusive towards the residents.

The Injured Worker is found to have violated a written work rule when she was physically abusive to a resident. Accordingly, she is found to have voluntarily abandoned her employment and she is not entitled to temporary total disability compensation.

The Ohio Supreme Court has stated that the circumstances of a termination of employment related to a violation of a written work rule must be careful [sic] examined to make sure that the Injured Worker is not being fired as a pretext. In this case, the Employer rule against abusing residents appears reasonable. Accordingly, a firing related to this rule would not appear to represent an "ulterior motive" or a firing of the Injured Worker because she had a work injury.

It is also noted that the claim in question represents a 1998 injury. A review of the record indicates that the Injured Worker related to this claim previously received temporary total disability compensation back in 2000. The Employer after this passage of time would not appear to have a motive to fire the Injured Worker because of the 1998 work injury claim.

The Injured Worker stated at hearing that when she was granted "unemployment benefits" by another state agency that there was a finding that she was "not terminated for just cause." The Injured Worker argued that based on this decision by another state agency that there should be no finding of a "Voluntary Abandonment" of employment by the Injured Worker in this case. This argument is rejected. The standards of adjudication and issues involved in an unemployment benefits case are different from workers' compensation, and the findings from the agency responsible for adjudicating unemployment benefit claims are not binding on the Industrial Commission.

This does not mean that the finding and decision of the other agency may not be considered as evidence in adjudicating a workers' compensation case, but the decisions of that other

agency, involving a completely different type of benefit, are not biding on the Industrial Commission.

{ 29} The SHO also addressed relator's evidence that, since the last hearing, she did attempt to return to work; however, she was unable to do so because of her allowed back conditions:

> The Injured Worker also argues that since the last hearing, the Injured Worker attempted to return to work, and that therefore, the Injured Worker is now entitled to temporary total disability benefits. Specifically the Injured Worker cited to the State ex rel. Hassan v. Marsh Bldg. Products, 100 Ohio St.3d 300, 2003-Ohio-6022.
>
> The Injured Worker testified at hearing that she attempted to return to work from 12/03/2012 through 12/14/2012 and that she was unable to do so because of her back. The Injured Worker also submitted a report from Dr. Palma, dated 12/14/2012, which states the Injured Worker cannot work at the present time related to her lower back.
>
> The Injured Worker argued at hearing that pursuant to the above referenced Hassan case, "any employment -- no matter how insubstantial --" is "sufficient" to overcome the previous "voluntary abandonment," and that any return to employment requires the payment of temporary total disability compensation. This presentation is found to represent an oversimplification of the required analysis.
>
> This issue has prior to the Hassan case been addressed by the Ohio Supreme Court in State ex rel. McCoy v. Dedicated Transport, Inc. 97 Ohio St.3d 25, 2002-Ohio-5305. The issue has been addressed since the Hassan case in the Appellate decision of State ex rel. Pierron v. Indus. Comm., 172 Ohio App.3d 168, 2007-Ohio-3292. The Pierron decision was affirmed by the Ohio Supreme Court in State ex rel. Pierron v. Indus. Comm., 120 Ohio St[.]3d 40, 2008-Ohio-5245.
>
> The Appellate Court in Pierron discusses the McCoy case, and states that when a Injured Worker who voluntarily leaves the work force re-enters the work force, and due to the original industrial injury, becomes temporarily and totally disabled while working at that new job, that the Injured Worker will be eligible to receive temporary total disability compensation. In Pierron, however, the court found that the

Injured Worker's return to part time work delivering flowers did not constitute "gainful employment" for these purposes.

Based on the Pierron case, an examination of the circumstances of the return to work must be examined. In this case the Injured Worker is found to have voluntarily abandoned her job when she violated a written work rule in June of 2010. The Injured Worker testified at hearing that after being terminated that she applied for social security benefits and was granted these benefits. She testified that these benefits were back dated to some time in 2010.

On 11/18/2011, the Injured Worker applied for temporary total disability benefits related to a psychological condition that was allowed in the claim on 03/11/2011. This motion for temporary total disability compensation was denied by the District Hearing Officer on 01/17/2012 related to a "Voluntary Abandonment." This decision was affirmed by Staff Hearing Officer order of 03/12/2012. This Staff Hearing Officer order was appealed into Court and by agreed entry and stipulation the Mandamus Action was dismissed, the Staff Hearing Officer order vacated, and the matter ordered reset on the appeal from the previous District Hearing Officer order.

It was not until after this time that the Injured Worker returned to work for the two week period from 12/03/2012 until 12/14/2012. The Injured Worker testified at hearing that she became unable to work this job because of her back. The Injured Worker submitted the previously referenced 12/14/2012 report from Dr. Palma to support this assertion.

This sporadic work is not found to represent a gainful return to work. The Injured Worker is found to have abandoned any desire to return to work when she filed for social security disability. Further, the Injured Worker originally requested the temporary total disability compensation related to a psychological condition. Dr. Malinky in a 11/11/2012 report states the Injured Worker can not do any work at the present time related to the allowed psychological condition in the claim. The brief return to work is inconsistent with the Injured Worker's own medical evidence. Further, the claimed basis for the Injured Worker's inability to continue her return from work from 12/03/2012 through 12/14/2012 is not her psychological condition, but related to her back condition. As previously stated in this order, the Injured

Worker's last temporary total disability compensation paid related to her to her back injury was in 2000, over ten years ago. In light of this evidence, the Injured Worker's brief return to work force on 12/03/2012 through 12/14/2012 does not represent a good faith return to gainful employment and the evidence is not persuasive that the Injured Worker has now become temporarily and totally disabled related to the back injury.

Accordingly, the Injured Worker's brief working experience from 12/03/2012 through 12/14/2012 does not constitute "gainful employment" or a desire by the Injured Worker to re-enter the work force. The Injured Worker is found to have voluntarily abandoned her employment and she is not entitled to temporary total disability compensation at this time.

{ 30}    12. Relator's appeal was refused by order of the commission mailed January 24, 2013.

{ 31}    13. Thereafter, relator file the instant mandamus action in this court.

Conclusions of Law:

{ 32}    Relator contends that the commission abused its discretion when it denied her request for TTD compensation on grounds that she had voluntarily abandoned her employment and had not made a good-faith effort to return to gainful employment.

{ 33}    Relator contends that her attempt to return to work from December 3 through December 14, 2012 satisfies the requirements of *State ex rel. McCoy v. Dedicated Transport Inc.*, 97 Ohio St.3d 25, 2002-Ohio-5305 and that the commission abused its discretion when the commission applied *State ex rel. Pierron v. Indus. Comm.*, 120 Ohio St.3d 40, 2008-Ohio-5245 and found that her brief return to work did not constitute gainful employment.

{ 34}    For the reasons that follow, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion when it applied rationale from *Pierron* in finding that relator did not return to gainful employment and, therefore, had not reestablished entitlement to an award of TTD compensation.

{ 35}    Historically, this court first held that, where the employee has taken action that would preclude his returning to his former position of employment, even if he were

able to do so, he is not entitled to continued TTD benefits since it is his own action, rather than the industrial injury, which prevents his returning to his former position of employment. *State ex rel. Jones & Laughlin Steel Corp. v. Indus. Comm.*, 29 Ohio App.3d 145 (10th Dist.1985). The *Jones & Laughlin* rationale was adopted by the Supreme Court of Ohio in *State ex rel. Ashcraft v. Indus. Comm.*, 34 Ohio St.3d 42 (1987), wherein the court recognized a "two-part test" to determine whether an injury qualified for TTD compensation. *Ashcraft* at 44. The first part of the test focuses upon the disabling aspects of the injury whereas the latter part determines if there are any other factors, other than the injury, which prevent the claimant from returning to his former position of employment.  *Id.*

{¶ 36}  In *State ex rel. Rockwell Internatl. v. Indus. Comm.*, 40 Ohio St.3d 44 (1988), the court held that an injury-induced abandonment of the former position of employment, as in taking a retirement, is not considered to be voluntary.

{¶ 37}  In *State ex rel. Louisiana-Pacific Corp. v. Indus. Comm.*, 72 Ohio St.3d 401, 403 (1995), the claimant was fired for violating the employer's policy prohibiting three consecutive unexcused absences. The court held that the claimant's discharge was voluntary, stating:

> [W]e find it difficult to characterize as "involuntary" a termination generated by the claimant's violation of a written work rule or policy that (1) clearly defined the prohibited conduct, (2) had been previously identified by the employer as a dischargeable offense, and (3) was known or should have been know to the employee. Defining such an employment separation as voluntary comports with Ashcraft and [*State ex rel. Watts v. Schottenstein Stores Corp.*, 68 Ohio St.3d 118 (1993)]—*i.e.*, that an employee must be presumed to intend the consequences of his or her voluntary acts.

{¶ 38}  In *McCoy*, the Supreme Court of Ohio explained that an injured worker who voluntarily abandons their employment can become entitled to a new period of TTD compensation.  The court stated:

> A claimant who voluntarily abandoned his or her former position of employment or who was fired under circumstances that amount to a voluntary abandonment of the former position will be eligible to receive temporary total

> disability compensation pursuant to R.C. 4123.56 if he or she reenters the work force and, due to the original industrial injury, becomes temporarily and totally disabled while working at his or her new job.

*Id.* at syllabus.

{¶ 39} As noted in the findings of fact, relator sustained her injury on October 5, 1998. At that time, relator's claim was allowed solely for physical conditions affecting her back. On June 3, 2010, relator was terminated from her job with Mill Run Care Center for violating a written work rule. In March 2011, relator's claim was allowed for the psychological condition major depression, severe, without psychotic features.

{¶ 40} In June 2011, relator filed a motion seeking an award of TTD compensation beginning September 28, 2010 and continuing. Relator's motion was supported by a C-84 completed by her treating psychologist John M. Malinky, Ph.D., who opined that her allowed psychological condition had rendered her temporarily unable to return to her former position of employment. Allen B. Levy, M.D., conducted an independent psychiatric evaluation. In his January 3, 2011 report, Dr. Levy opined that, while relator's depression was directly due to her job-related injury, there was no evidence that the depression was independently disabling. Donald S. Scott, Ph.D., evaluated relator on November 11, 2011 and he opined that relator's psychiatric condition had rendered her disabled beginning September 28, 2010.

{¶ 41} As noted in the findings of fact, relator's request for TTD compensation was denied following a hearing before an SHO on March 12, 2012. The SHO concluded that relator had voluntarily abandoned her employment and was not eligible for TTD compensation. Relator filed a mandamus action in this court; however, the parties voluntarily dismissed the mandamus action and the matter was returned to the commission for a new hearing. After the parties voluntarily dismissed the original mandamus action here, relator attempted to return to work for the two-week period from December 3 until December 14, 2012. Relator testified that she was not able to continue to work this job because of her allowed back conditions. The fact that it was her back conditions which prevented her from continuing in this job was supported by the December 14, 2012 letter from her treating physician Bernard Palma, D.O.

{¶ 42} When the matter of relator's entitlement to TTD compensation was again heard before the commission, the SHO essentially determined that relator's brief return to the workforce two years after she was terminated from her former position of employment was not sufficient to reestablish a causal connection between her lack of earnings and her allowed conditions. Stated another way, the SHO found that relator failed to meet her burden of proving that, after her voluntary abandonment of employment, she (1) returned to gainful employment, and (2) became disabled from that new employment due to the allowed conditions in her claim.

{¶ 43} In the *McCoy* case, Lester McCoy sustained an injury in the course of his employment and was later terminated in March 1998 for tardiness and insubordination. In June 1999, McCoy underwent surgery and sought an award of TTD compensation. The record revealed that his only employment, from March 1998 when he was fired to June 28, 1999 when he underwent surgery, consisted of driving his cousin's truck on 12 to 15 separate days between February and April 1999. The commission found that this activity did not constitute sustained gainful employment and the Supreme Court of Ohio agreed.

{¶ 44} In *Pierron*, the Supreme Court of Ohio again considered whether a claimant's return to sporadic employment following the elimination of his job (involuntary departure) was a return to gainful employment sufficient to entitle him to an award of TTD compensation. Richard Pierron was seriously injured in 1973 while working as a telephone lineman. Following his injury, Pierron had medical restrictions which were incompatible with his former position of employment. Pierron was offered and accepted a light-duty warehouse job consistent with those restrictions and continued to work in that position for the next 23 years. In 1997, Pierron's light-duty warehouse position was eliminated and, in the years that followed, Pierron remained unemployed except for a brief part-time stint as a flower delivery person. In late 2003, Pierron moved for TTD compensation beginning in June 2001 and the commission denied that request finding that he had voluntarily abandoned his former position of employment when he retired.

{¶ 45} The court recognized that Pierron did not initiate his departure from the workforce; however, the court also noted that there was no causal relationship between his industrial injury and either his departure from his former position of employment or

his voluntary decision to no longer be actively employed. Relying on its earlier decision in *State ex rel. Pepsi-Cola Bottling Co. v. Morse*, 72 Ohio St.3d 210 (1995), the court noted that when a departure from the entire workforce is not motivated by an injury, the court presumes it to be a lifestyle choice and, inasmuch as workers' compensation benefits were never intended to subsidize lost or diminished earnings attributable to lifestyle decisions, the court upheld the commission's decision to deny Pierron TTD compensation.

{¶ 46} In the present case, relator was performing her former position of employment without any restrictions in June 2010 when she was terminated. Between June 2010 and December 2012 relator did not work. It was not until after relator's motion for TTD compensation was originally denied that returned to employment. At that time, her application for TTD compensation was based on medical evidence indicating that, due solely to the allowed psychological condition in her claim, relator was incapable of performing any employment. After performing this new job for two weeks, relator testified that her allowed back conditions were the cause of her inability to remain and never inferred that her allowed psychological condition was preventing her from remaining in that job.

{¶ 47} Relator relies heavily on *State ex rel. Hassan v. Marsh Bldg. Prods.*, 100 Ohio St.3d 300, 2003-Ohio-6022, which was decided shortly after the court decided *McCoy* and prior to the court's decision in *Pierron*. Abdikarim Hassan voluntarily abandoned his former position 10 days after his industrial injury. Approximately 7 weeks later, Hassan began working for Airborne Express. In the next 3 weeks, Hassan worked 8, 19 and one-half, and 24 hours respectively. Hassan asserted that, since the date of injury, his condition worsened and prohibited him from being able to perform the position he had taken with Airborne Express. Hassan's claim was additionally allowed for significant conditions and surgery was recommended.

{¶ 48} Hassan requested TTD compensation, which the commission denied finding that he had voluntarily abandoned his employment. While Hassan's mandamus action was pending in this court, the Supreme Court of Ohio decided *McCoy.* This court issued a limited writ, returning the matter to the commission to consider Hassan's medical evidence.

{¶ 49} Hassan's employer appealed and the Supreme Court of Ohio affirmed this court's decision. At the end of its decision, the court stated:

> [W]e are persuaded by claimant's assertion that because any employment—no matter how insubstantial—bars TTC, see *State ex rel Blabac v. Indus. Comm.* (1999), 87 Ohio St.3d 113, 717 N.E.2d 336, then any employment should be sufficient to invoke *McCoy*.

*Id.* at ¶ 8.

{¶ 50} Relator asserts that this court should reject the holding from Pierron and find, as a matter of law, that return to any employment after the voluntary abandonment of employment is sufficient to entitle a claimant to an award of TTD compensation. Finding that the injured worker's *intent* is a crucial factor to consider in a voluntary abandonment situation where it is not a factor to consider when determining whether or not an injured worker is working while receiving TTD compensation, the magistrate rejects relator's argument.

{¶ 51} The magistrate finds that, the commission did not abuse its discretion in finding that relator's return to work two years after she was terminated and after TTD compensation was originally denied on grounds that she had not attempted to return to any work was not sufficient to re-establish her entitlement to an award of TTD compensation.

{¶ 52} Relator also challenges the commission's statement in its order that her receipt of Social Security Disability benefits was some evidence supporting a finding that she did not intend to return to work. The magistrate disagrees with relator's argument.

{¶ 53} It is undisputed that recipients of Social Security Disability may attempt trial returns to work. Relator equates her attempt to return to work as evidence that, although receiving Social Security Disability, she did attempt a trial return to work.

{¶ 54} Here, the commission's decision that relator was not entitled to an award of TTD compensation was based on several findings: (1) relator waited two and one-half years from the date she was terminated before she to returned to any employment; (2) relator only remained in that employment for two weeks; (3) at the time that relator returned to this new employment, she was under medical restrictions indicating that, from a psychological standpoint, she was not capable of working at all; (4) relator's

reasons for leaving this new employment were not related to the allowed psychological condition but were, instead, related to the allowed physical conditions in her claim; and (5) relator had been receiving Social Security Disability benefits since 2010. The magistrate finds that it was not improper for the commission to consider all of these factors in determining that relator was not entitled to an award of TTD compensation. The magistrate finds that the commission's order is supported by some evidence.

{¶ 55} Based on the forgoing, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion when it denied her an award of TTD compensation and this court should deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
STEPHANIE BISCA BROOKS

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).