O’Neill, J.,
dissenting.
{¶ 21} I question the application of the judicially created theory of voluntary abandonment of employment in any workers’ compensation case, but it is particularly troubling in cases where the Industrial Commission has not even considered all the medical evidence presented by the claimant. In this case, *90 there is unequivocal medical evidence that this employee was injured on the job. And the Industrial Commission has yet to address the merits of Wanda Jacobs’s request for compensation based on the report from Dr. Rafik Massoun. I believe that any discussion of voluntary abandonment of employment is premature at best. This case should be remanded to the Industrial Commission for further proceedings.
{¶ 22} I continue to maintain my position that “voluntary abandonment of employment” is a judicial creation that is eroding Ohio’s constitutionally guaranteed no-fault workers’ compensation system. Decisions such as the majority’s in this case take the court further down the wrong path. State ex rel. Robinson v. Indus. Comm., 138 Ohio St.3d 471, 2014-Ohio-546, 8 N.E.3d 883 (O’Neill, J., dissenting).
{¶ 23} Ohio’s workers’ compensation system is a no-fault system established 100 years ago by an amendment to the Ohio Constitution. See Article II, Section 35. It is codified in great detail in the Ohio Revised Code. The cornerstone of Ohio’s system is that both sides surrender certain rights to gain certain protections. Injured workers relinquish their common-law access to the courts and their right to recover damages if they are injured on the job. In return, they gain the right to be compensated for medical bills and loss of earnings from a multibillion-dollar fund supplied by employers, who contribute a percentage of payroll in a predictable and fair process. Employers relinquish their common-law defenses and, in return, receive an iron-clad assurance that they cannot be sued for workplace injuries. It is a system of mutual compromise. Blankenship v. Cincinnati Milacron Chems., Inc., 69 Ohio St.2d 608, 614, 433 N.E.2d 572 (1982).
{¶ 24} In State ex rel. Ashcraft v: Indus. Comm., 34 Ohio St.3d 42, 517 N.E.2d 533 (1987), this court held that a claimant receiving temporary-total-disability compensation forfeits his right to continue receiving compensation when he becomes incarcerated, because he has voluntarily abandoned the workforce. This judicially created concept of voluntary abandonment was later expanded and applied to circumstances in which an injured worker is terminated following the injury. State ex rel. Louisiana-Pacific Corp. v. Indus. Comm., 72 Ohio St.3d 401, 650 N.E.2d 469 (1995). In Louisiana-Pacific, this court held that an injured employee who is fired is barred from receiving temporary-total-disability compensation when the employer can show that the worker was terminated for violating a written work rule that (1) clearly defined the prohibited conduct, (2) had been previously identified by the employer as a dischargeable offense, and (3) was known or should have been known to the employee. Id. at 403. I believe that this analysis is entirely irrelevant to a determination of a claimant’s eligibility for lost wages as a result of a workplace injury.
*91 Nager, Romaine & Schneiberg Co., L.P.A., Jennifer L. Lawther, Jerald A. Schneiberg, and Stacy M. Callen, for appellant.
Michael DeWine, Attorney General, and Colleen C. Erdman, Assistant Attorney General, for appellee Industrial Commission.
William W. Johnston, for appellee Cenveo, Inc.
{¶ 25} The case before us is a classic example of the consequences of creating an adversarial relationship where none should exist. The majority emphasizes the rationale that in voluntary-abandonment cases, the termination is unrelated to the worker’s claimed injury. Majority opinion at ¶ 18, citing State ex rel. Brown v. Hoover Universal, Inc., 132 Ohio St.3d 520, 2012-Ohio-3895, 974 N.E.2d 1198, ¶ 11, and State ex rel. Daniels v. Indus. Comm., 99 Ohio St.3d 282, 2003-Ohio-3626, 791 N.E.2d 440, ¶ 7.
{¶ 26} But that clearly is not the case here. There was no break in the causal relationship between the industrial injury and the employee’s inability to perform her job. Jacobs was injured on the job and tried to return to work on light duty. That did not work, and she has not been back since. Clearly, the termination is directly related to her inability to perform her job due to her injury. That issue is simply not subject to dispute based upon the record before us.
{¶ 27} If self-insured employers can avoid the payment of lost wages by terminating an employee subsequent to an injury, a cost-saving incentive is created: they do not have to pay anything — no lost wages, no payroll taxes. In short, the problem is gone with the employee. By design, this incentive undermines the workers’ compensation system as a whole. It cannot be stated strongly enough that voluntary abandonment is wholly irrelevant to a determination of eligibility for temporary-total-disability compensation. The application of this defense in a case where all of the claimant’s medical evidence has not been evaluated by the Industrial Commission is plain wrong. I dissent.