Per Curiam.
{¶ 1} This case involves an injured worker’s eligibility for temporary-total-disability compensation after he quit his job on the same day that he reported to work with a note from his doctor restricting him to modified duty. Appellee Industrial Commission determined that appellant, Brian J. Hildebrand Jr., voluntarily abandoned the workforce when he quit his job for reasons unrelated to his industrial injury and therefore was ineligible for temporary-total-disability compensation.
{¶ 2} The Tenth District Court of Appeals denied Hildebrand’s request for a writ of mandamus. The court rejected his argument, based on State ex rel. Pretty Prods., Inc. v. Indus. Comm., 77 Ohio St.3d 5, 670 N.E.2d 466 (1996), that at the time his employment terminated (regardless of whether he quit or was fired), he could not have voluntarily abandoned his employment because he was physically unable to return to the duties of his former position.
{¶ 3} We find that the court of appeals did not abuse its discretion when it denied the requested writ, because the commission’s order denying temporary-total-disability compensation was based on evidence that Hildebrand voluntarily quit his job for reasons unrelated to his industrial injury. Consequently, we affirm the judgment of the court of appeals.
{¶ 4} Hildebrand injured his back on June 3, 2009, while working as a mechanic for appellee Wingate Transport, Inc. He reported the injury to his supervisor. Five days later, on June 8, 2009, he visited Matthew Bertollini, D.C., who diagnosed a left sacroiliac joint sprain/strain.
*534 {¶ 5} He returned to work the following day with a note from Dr. Bertollini restricting him to modified duty. Shortly after he arrived, Jeffrey Wingate, the owner of Wingate Transport, telephoned from a different location to confirm with Hildebrand that he could return to light-duty work. During the conversation, Wingate asked Hildebrand to return the key to the Jeep that he had loaned him after Hildebrand had totaled his own motor vehicle in an accident. Hildebrand had been using the Jeep for the previous six months.
{¶ 6} According to Wingate, Hildebrand became agitated and asked if he was being fired. Wingate replied that he was not fired, but that it was time for him to stop using Wingate’s Jeep. Hildebrand became upset and began loading tools and equipment into the pickup truck of an owner-operator who drove for Wingate Transport. Wingate returned to the work site and asked Hildebrand to stop so that he could identify the items being taken. When Hildebrand refused, Wingate called the police. Hildebrand eventually cooperated with the police officers who responded, unloaded the items, and left the premises.
{¶ 7} A week later, Hildebrand filed for unemployment benefits. The Department of Job and Family Services determined that he had quit his job on June 9, 2009, for personal reasons without just cause and denied benefits.
{¶ 8} On June 19, 2009, Hildebrand filed a report of his June 3 injury with the Bureau of Workers’ Compensation. Wingate Transport objected to the claim because of Hildebrand’s history of low-back problems. On September 2, 2009, a hearing officer allowed the claim for left sacroiliac sprain/strain,[1] but denied Hildebrand’s request for temporary-total-disability compensation on the basis that he had voluntarily quit on June 9, 2009, and had not reentered the workforce. The hearing officer further found that Wingate Transport had been “ready, willing and able to offer light-duty employment” within Hildebrand’s physical capabilities. The commission refused Hildebrand’s appeal and denied his request for reconsideration.
{¶ 9} Hildebrand filed a complaint in the Tenth District Court of Appeals seeking a writ of mandamus that would require the commission to find that he was entitled to temporary-total-disability compensation. A magistrate determined that the evidence supported the commission’s finding that Hildebrand had quit his job at Wingate Transport for reasons unrelated to his injuries. The magistrate rejected Hildebrand’s argument that he could not have voluntarily abandoned his job based on the principle discussed in State ex rel. Pretty Prods., 77 Ohio St.3d at 7, 670 N.E.2d 466, that a claimant “already disabled when the separation occurred” cannot abandon a former position. According to the magistrate, Pretty Prods, and similar cases involved employees who were unable *535 to return to former positions of employment because they had been fired for violating written work rules. The magistrate concluded that because the evidence supported the commission’s determination that Hildebrand had voluntarily quit for reasons unrelated to his claim, Pretty Prods, was distinguishable and did not apply.
{¶ 10} The court of appeals overruled Hildebrand’s objections to the magistrate’s report and denied the writ. The court agreed with the magistrate that the record supported that Hildebrand was not fired but had voluntarily quit. 2011-Ohio-3787, 2011 WL 3299018, ¶ 5-6. Next, the court agreed that the magistrate appropriately concluded that Pretty Prods, and its progeny did not apply because those decisions involved instances in which an employee was discharged from employment, not those in which an employee quit for reasons unrelated to the industrial injury. Id. at ¶ 7. Finally, the court overruled Hildebrand’s objection that the magistrate had failed to address his argument regarding the accuracy of the hearing officer’s statement that he had quit despite the employer having a light-duty job available for him. The court reasoned that under these circumstances, the issue of the availability of a light-duty position was not crucial to the question of his eligibility for temporary-total-disability compensation. Id. at ¶ 8.
{¶ 11} Hildebrand appealed as of right to this court. We referred the case to mediation and stayed briefing. After mediation was unsuccessful, the case was returned to the regular docket and briefing commenced.
{¶ 12} To be entitled to an extraordinary remedy in mandamus, Hildebrand must establish a clear legal right to the relief requested, a clear legal duty on the part of the commission to provide the relief, and the lack of an adequate remedy in the ordinary course of the law. State ex rel. Gen. Motors Corp. v. Indus. Comm., 117 Ohio St.3d 480, 2008-Ohio-1593, 884 N.E.2d 1075, ¶ 9. This requires Hildebrand to demonstrate that the commission abused its discretion by entering an order not supported by the evidence in the record. State ex rel. Burley v. Coil Packing, Inc., 31 Ohio St.3d 18, 20, 508 N.E.2d 936 (1987).
{¶ 13} Temporary-total-disability compensation is intended to compensate an injured worker who is temporarily unable to return to the duties of his or her former position of employment as a result of a workplace injury. This court has stated that “it must appear that, but for the industrial injury, the claimant would be gainfully employed.” State ex rel. McCoy v. Dedicated Transport, Inc., 97 Ohio St.3d 25, 2002-Ohio-5305, 776 N.E.2d 51, ¶ 35. Because temporary-total-disability compensation requires a causal connection between the inability to work and the industrial injury, an injured worker who voluntarily leaves a position of employment is generally barred from receiving temporary-total-disability compensation. State ex rel. Rockwell Internatl. v. Indus. Comm., 40 Ohio St.3d 44, *536 46, 531 N.E.2d 678 (1988); State ex rel. Ashcraft v. Indus. Comm., 34 Ohio St.3d 42, 44, 517 N.E.2d 533 (1987).
{¶ 14} Hildebrand does not appeal the finding that he voluntarily quit his job for reasons unrelated to his industrial injury. Instead, he argues that he is not barred from receiving temporary-total-disability compensation because at the time he left his job — whether he quit or was fired — he was under medical restrictions and unable to perform the duties of his position; thus, his departure .cannot be considered voluntary. Hildebrand relies on the principle stated in Pretty Prods, that a claimant who is already disabled when terminated from employment is not disqualified from temporary-total-disability compensation because a claimant can abandon a former position of employment only if physically capable of doing that job at the time of abandonment or removal. See 77 Ohio St.3d at 7, 670 N.E.2d 466.
{¶ 15} Pretty Prods, involved a claimant who was off work because of a work-related back injury. Her treating physician certified that she could return to work on March 1, 1991. She did not return and was eventually terminated for absenteeism. The commission determined that her discharge could not be deemed a voluntary abandonment merely because she did not timely submit an excuse slip from her doctor, and it awarded her temporary-total-disability compensation. Id. at 6-7.
{¶ 16} This court concluded that the commission’s order was vague and ambiguous and remanded the cause to the commission for clarification. In doing so, this court reaffirmed that to be entitled to temporary-total-disability compensation, the claimant’s inability to perform his or her job duties must be the result of the work-related injury. Id. at 6. We further stated:
Once a claimant is separated from the former position of employment, future [temporary-total-disability] compensation eligibility hinges on the timing and character of the claimant’s departure.
The timing of a claimant’s separation from employment can, in some cases, eliminate the need to investigate the character of departure. For this to occur, it must be shown that the claimant was already disabled at the time the separation occurred. “[A] claimant can abandon a former position or remove himself or herself from the work force only if he or she has the physical capacity for employment at the time of the abandonment or removal.” State ex rel. Brown v. Indus. Comm. (1993), 68 Ohio St.3d 45, 48, 623 N.E.2d 55, 58.
However, such situations are not common, and inquiry into the character of departure is the norm.
*537 Id. at 6-7.
{¶ 17} This court has applied Pretty Prods, in other cases in which claimants have been discharged while unable to return to the duties of a former position of employment. In State ex rel. OmniSource Corp. v. Indus. Comm., 113 Ohio St.3d 303, 2007-Ohio-1951, 865 N.E.2d 41, the claimant truck driver receiving temporary-total-disability compensation was convicted of driving his personal vehicle under the influence of alcohol. OmniSource terminated him for failure to have a valid commercial driver’s license (a violation of a work rule) and discontinued paying compensation. The commission concluded that the claimant did not voluntarily relinquish his job because he was already disabled when he had been fired. This court agreed, stating that Pretty Prods, applies to discharges for violations of work rules. Id. at ¶ 10.
{¶ 18} In State ex rel. Luther v. Ford Motor Co., Batavia Trans. Plant, 113 Ohio St.3d 144, 2007-Ohio-1250, 863 N.E.2d 151, the claimant had been receiving temporary-total-disability compensation until he stopped submitting to his employer medical reports that were required to maintain his temporary-total-disability status. He was eventually terminated for failing to either return to work or provide medical information. The commission concluded that this was a voluntary abandonment and discontinued compensation. But this court agreed with Luther that the commission had failed to consider whether he was disabled when fired and whether his absenteeism had been caused by his industrial injury, stating that “[w]here the infraction that precipitated discharge is potentially due to industrial injury, further inquiry is necessary.” Id. at ¶ 17, citing Pretty Prods., 77 Ohio St.3d at 7-8, 670 N.E.2d 466.
{¶ 19} In State ex rel. Reitter Stucco, Inc. v Indus. Comm., 117 Ohio St.3d 71, 2008-Ohio-499, 881 N.E.2d 861, the claimant was fired for making comments about the company’s president while off work due to an industrial injury. The commission, applying Pretty Prods., ordered that because the claimant had been temporarily and totally disabled when he was fired, temporary-total-disability compensation was not precluded. This court upheld the commission’s decision. Id. at ¶ 12.
{¶ 20} Here, on the other hand, appellees argue that Hildebrand terminated his employment for reasons unrelated to his industrial injury; thus, his departure from employment (resulting in a loss of wages) was not causally related to his industrial injury — a requirement for temporary-total-disability compensation.
{¶ 21} We agree. Because Hildebrand failed to demonstrate that his loss of earnings was due to the industrial injury, he did not meet that requirement for receiving temporary-total-disability compensation. When determining an injured worker’s eligibility for temporary-total-disability compensation, the initial focus is *538 on whether the employee’s departure from employment (resulting in a loss of earnings) was causally related to the allowed conditions of the claim. McCoy, 97 Ohio St.3d 25, 2002-Ohio-5305, 776 N.E.2d 51, at ¶ 35; Ashcraft, 34 Ohio St.3d at 44, 517 N.E.2d 533. If the injured worker leaves the workforce for reasons unrelated to the industrial injury, there is no loss of earnings due to the injury, and the employee is not eligible for temporary-total-disability compensation. State ex rel. Pierron v. Indus. Comm., 120 Ohio St.3d 40, 2008-Ohio-5245, 896 N.E.2d 140, ¶ 9.
{¶ 22} It is undisputed that evidence in the record supports that Hildebrand voluntarily quit his job following a disagreement with his employer that had nothing to do with his injury. This disagreement happened to occur shortly after he reported to work with a note from his doctor restricting him to modified duty. His departure was not causally related to the industrial injury. It was voluntary and broke the nexus between the injury and the unemployment; thus, he was not entitled to temporary-total-disability compensation. Ashcraft at 44.
{¶ 23} Furthermore, Pretty Prods. does not apply here. In Pretty Prods, and similar cases that followed, each injured worker was already receiving temporary-total-disability compensation when terminated from employment and had therefore already demonstrated that he or she was disabled as a result of an industrial injury (which was the cause of a loss of earnings). Pretty Prods, held that a subsequent termination did not change that, so the disabled worker continued to be entitled to temporary-total-disability compensation despite having been terminated from employment.
{¶ 24} The court of appeals distinguished Pretty Prods, and related cases on the basis that they involved claimants who had been discharged, not claimants who had voluntarily quit. Hildebrand maintains that there is no distinction made between an employee who is terminated as a result of misconduct and one who voluntarily quits a job. See State ex rel. Daniels v. Indus. Comm., 99 Ohio St.3d 282, 2003-Ohio-3626, 791 N.E.2d 440, ¶ 7. Nevertheless, Pretty Prods, has not been considered in the context of an injured worker who voluntarily quit for reasons unrelated to the allowed claim. This is most likely because a claimant who is being paid temporary-total-disability compensation while not working has little incentive to quit.
{¶ 25} In addition, it would be illogical to extend Pretty Prods, to a claimant who elects to leave a job — for reasons unrelated to the industrial injury — before the employer is afforded the opportunity to offer work within his medical restrictions. This would apply Pretty Prods, in circumstances beyond those contemplated in that case. Although Hildebrand had a doctor’s note restricting *539 him to modified duty, it was his decision to quit his job over a dispute about using his boss’s Jeep that caused his loss of wages.
{¶ 26} Finally, the presence or absence of alternative employment is not dispositive here. Hildebrand argued that the commission also abused its discretion when it based its denial of temporary-total-disability compensation on speculation that his former employer might have offered him light-duty work. As the court of appeals determined, because Hildebrand quit his job for reasons not related to his allowed claim, whether or not the employer would have offered him light-duty work is not crucial to the issue of temporary-total-disability eligibility. See State ex rel. Santiago v. Indus. Comm., 10th Dist. Franklin No. 09AP-419, 2010-Ohio-1020, 2010 WL 927186 (an injured worker who returned to light-duty work was ineligible for temporary-total-disability compensation because he voluntarily abandoned his employment when he quit because of scheduling conflicts).
{¶ 27} Therefore, we agree with the court of appeals that the commission did not abuse its discretion when it relied on evidence that Hildebrand voluntarily abandoned his position for reasons unrelated to his industrial injury to deny his request for temporary-total-disability compensation, and we affirm the court’s judgment.
Judgment affirmed.
O’Connor, C.J., and Pfeifer, O’Donnell, Lanzinger, Kennedy, and French, JJ., concur.
O’Neill, J., dissents.

. The claimant’s allowed medical condition is not at issue in this appeal.