[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Cordell v. Pallet Cos., Inc.,* Slip Opinion No. 2016-Ohio-8446.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-8446

THE STATE EX REL. CORDELL, APPELLEE *v.* PALLET COMPANIES, INC., ET AL., APPELLANTS.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Cordell v. Pallet Cos., Inc.,* Slip Opinion No. 2016-Ohio-8446.]**

*Workers' compensation—Temporary total disability—When an employee is terminated after a workplace injury for conduct prior to and unrelated to the workplace injury, his termination does not amount to a voluntary abandonment of employment for purposes of temporary-total-disability compensation when (1) the discovery of the dischargeable offense occurred because of the injury and (2) at the time of the termination, the employee was medically incapable of returning to work as a result of the workplace injury—Court of appeals' judgment granting writ of mandamus compelling Industrial Commission to grant temporary-total-disability compensation affirmed.*

(No. 2015-0163—Submitted August 31, 2016—Decided December 29, 2016.)

APPEAL from the Court of Appeals of Franklin County, No. 13-AP-1017, 2014-Ohio-5561.

———————————

**SYLLABUS OF THE COURT**

When an employee is terminated after a workplace injury for conduct prior to and unrelated to the workplace injury, his termination does not amount to a voluntary abandonment of employment for purposes of temporary-total-disability compensation when (1) the discovery of the dischargeable offense occurred because of the injury and (2) at the time of the termination, the employee was medically incapable of returning to work as a result of the workplace injury.

———————————

**O'NEILL, J.**

{¶ 1} Appellee, James F. Cordell, was terminated from his employment with appellant Pallet Companies, Inc. ("Pallet") after failing a routine drug test administered soon after a workplace accident in which he was injured. Pallet concedes that Cordell's drug use did not cause the accident. In this appeal, we consider whether conduct prior to a workplace injury can sustain an employer's defense of voluntary abandonment of employment and preclude temporary-total-disability ("TTD") benefits. Cordell's workers' compensation claim was initially allowed for TTD compensation, but then the Industrial Commission determined that Cordell was not eligible for TTD compensation, because he voluntarily abandoned his employment by using marijuana prior to the accident. The Tenth District Court of Appeals granted Cordell a writ of mandamus compelling the commission to vacate its order denying TTD compensation and to issue an order granting Cordell TTD compensation. We affirm.

**Facts and Procedural History**

{¶ 2} The parties do not dispute the facts regarding Cordell's injury. Cordell worked for Pallet from August 2009 until February 2012. He was injured

in an accident in the course and scope of his employment on February 16, 2012. He was operating a tow motor on a loading dock that day when the truck he was servicing began to move away from the dock unexpectedly. Cordell jumped from the tow motor to the dock plate, but then fell from the dock plate when the truck moved a second time. He dropped between five and six feet, landing between the dock and the truck and fracturing his right fibula and tibia. At the hospital, Cordell's urine was collected and sent for a toxicology screening. Cordell applied for workers' compensation benefits the day after the accident.

{¶ 3} Six days later, on February 22, 2012, Cordell's toxicology results became available, and they showed that he tested positive for marijuana metabolites, indicating that at some point during his employment, he had used marijuana. Cordell was terminated from employment that day for violating Pallet's workplace policy. His termination notice specified that he was being terminated because he "failed postaccident drug screen."

{¶ 4} Pallet maintained a drug-free-workplace policy that prohibited the use of illegal substances "at any time whether on or off duty," the violation of which was a terminable offense.

{¶ 5} On March 5, 2012, the Bureau of Workers' Compensation ("BWC") allowed Cordell's claim for medical benefits for his fractured right tibia and fibula and for TTD compensation starting on February 17, 2012. Pallet appealed on March 20, 2012, and the matter was heard by a district hearing officer ("DHO") on May 1, 2012. The DHO determined that Cordell was eligible for medical benefits for the allowed injuries but found that he was not eligible for TTD compensation, because he had been terminated for a preinjury violation of the workplace policy.

{¶ 6} Cordell appealed from the DHO order on May 9, 2012, and the matter was heard by a staff hearing officer ("SHO") on July 2, 2012. The SHO vacated the DHO order to the extent that it denied Cordell TTD compensation. The SHO noted that *State ex rel. Pretty Prods., Inc. v. Indus. Comm.*, 77 Ohio St.3d 5, 670

N.E.2d 466 (1996), held that "an Injured Worker who is unable to return to work at his former position of employment cannot voluntarily abandon his former position of employment." Applying our ruling in *Pretty Prods.*, the SHO determined that Cordell "was terminated on 02/22/2012, after he was disabled by the injury in this claim. Therefore, the termination does not amount to a voluntary abandonment of employment and does not preclude the payment of temporary total compensation."

{¶ 7} Pallet appealed to the commission on July 17, 2012, arguing that the SHO's failure to apply *State ex rel. PaySource USA, Inc. v. Indus. Comm.*, 10th Dist. Franklin No. 08AP-677, 2009 WL 3246775 (June 30, 2009), constituted legal error. In *PaySource*, the claimant was terminated for his use of cocaine prior to the industrial injury. The court of appeals determined that the claimant had voluntarily abandoned his employment when he used drugs prior to the injury, which severed any connection between the workplace injury and loss of wages. Thus, the court of appeals granted a writ of mandamus and ordered the commission to deny TTD compensation.

{¶ 8} After initially rejecting Pallet's appeal, the commission agreed to consider whether Cordell was entitled to TTD compensation. On May 11, 2013, a divided panel of the commission agreed with Pallet that the SHO had made a clear mistake of law by not applying *PaySource*. The panel found that Cordell "sustained an injury in the course of and arising out of his employment on 2/16/2012." But the panel determined that Cordell had "voluntarily abandoned his employment" by " 'ingestion' or 'use' of marijuana * * * prior to [his] termination on 02/22/2012" and "prior to the industrial injury." Accordingly, the panel denied TTD compensation from the date of the injury. Consistent with that order, the BWC issued an overpayment notice on May 17, 2013, finding that Cordell had been paid $22,081.88 in TTD compensation to which he had not been entitled.

{¶ 9} One member of the panel dissented. Citing *State ex rel. Ohio Decorative Prods., Inc. v. Indus. Comm.*, 10th Dist. Franklin No. 10AP-498 (Sept.

4

15, 2011), the dissenting panel member explained that *PaySource* has been "heavily discounted" in more recent published decisions of the Tenth District Court of Appeals. The panel member would have instead applied our decision on reconsideration in *State ex rel. Gross v. Indus. Comm.*, 115 Ohio St.3d 249, 2007-Ohio-4916, 874 N.E.2d 1162 ("*Gross II*"), and awarded TTD compensation from the time of the injury.

{¶ 10} On December 3, 2013, Cordell petitioned the Tenth District Court of Appeals for a writ of mandamus compelling the commission to vacate its order denying TTD compensation and declaring an overpayment and to enter an order awarding TTD compensation from the date of the injury. A magistrate for the court of appeals recommended that a writ issue after comparing *PaySource,* which did not apply *Gross II*, to the later-issued published opinion of the Tenth District Court of Appeals in *State ex rel. Ohio Welded Blank v. Indus. Comm.*, 10th Dist. Franklin No. 08AP-772, 2009-Ohio-4646, which did apply *Gross II* to essentially the same facts as in *PaySource* (claimant terminated after workplace injury for use of illegal drugs prior to the injury). The court of appeals adopted the magistrate's recommendation over Pallet's objections. We now take up the direct appeals of the commission and Pallet.

{¶ 11} The commission asserts the following two propositions of law.

{¶ 12} Proposition of law No. I: "Reliance on [*Gross II*] without considering the decision in [*PaySource*], creates bad public policy that rewards illegal behavior."

{¶ 13} Proposition of law No. II: "When the Industrial Commission had some evidence to support its order that a claimant violated a written work rule thereby barring his receipt of TTD compensation, a writ of mandamus is not appropriate."

{¶ 14} Pallet asserts the following three propositions of law.

{¶ 15} Proposition of law No. I: An injured worker who fails a postinjury drug test and is terminated based on his employer's drug-free-workplace policy voluntarily abandoned his employment and is not eligible for TTD.

{¶ 16} Proposition of law No. II: *Gross II*, 115 Ohio St.3d 249, 2007-Ohio-4916, 874 N.E.2d 1162, does not preclude a finding of voluntary abandonment when the act that resulted in the injured worker's termination was not contemporaneous with the injury.

{¶ 17} Proposition of law No. III: The commission has the exclusive authority to resolve factual issues, and to that extent, its determination that the injured worker's conduct, which was not contemporaneous with his injury, constitutes a voluntary abandonment of his employment, should not be disturbed absent a showing of an abuse of discretion.

{¶ 18} Because the second proposition of law asserted by the commission and the third proposition of law asserted by Pallet address this court's standard of review, we will address them first.

**Analysis**

The commission's second proposition of law

and Pallet's third proposition of law

{¶ 19} R.C. 4123.512 limits this court's authority to act as an appellate body with respect to decisions made by the commission concerning the extent of disability. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76, 79, 497 N.E.2d 70 (1986) (At the time *Elliott* was decided, R.C. 4123.512 was numbered R.C. 4123.519). *Id.* It is well settled that the commission is "exclusively responsible" for making factual determinations; and those determinations will not be disturbed absent an abuse of discretion. *State ex rel. Nick Strimbu, Inc. v. Indus. Comm.*, 106 Ohio St.3d 173, 2005-Ohio-4386, 833 N.E.2d 286, ¶ 10. This is the some-evidence rule. *Elliot* at 79. But "[a] mandatory writ may issue against the Industrial

Commission if the commission has incorrectly interpreted Ohio law." *State ex rel. Gassmann v. Indus. Comm.*, 41 Ohio St.2d 64, 65, 322 N.E.2d 660 (1975).

{¶ 20} Here, the extent of Cordell's injuries are not disputed. Therefore, we limit our review in this case to whether the law was correctly interpreted. We conclude that the commission did not correctly interpret the law in this case.

{¶ 21} For the reasons discussed below, the relevant statutes and this court's decisions in *Gross II* and *State ex rel. Reitter Stucco, Inc. v. Indus. Comm.*, 117 Ohio St.3d 71, 2008-Ohio-499, 881 N.E.2d 861, are directly applicable to this case and resolve the legal questions presented in favor of granting TTD benefits to Cordell.

The commission's first proposition of law and<br>Pallet's first and second propositions of law

{¶ 22} We hold that pursuant to R.C. 4123.54 and 4123.56 and our decisions in *Gross II* and *Reitter Stucco*, an employee who is medically incapable of returning to work as a result of a workplace injury and who is terminated after the injury for preinjury conduct that was discovered as a result of the injury has not voluntarily abandoned employment.

{¶ 23} In 1912, Ohio amended the Ohio Constitution to establish a framework for the resolution of claims for work-related injuries. Article II, Section 35 of the Ohio Constitution provides that compensation from the workers' compensation fund to an employee injured at the workplace "shall be in lieu of all other rights to compensation, or damages for * * * injuries * * *, and any employer who pays the premium or compensation provided by law * * * shall not be liable to respond in damages at common law or by statute for * * * injuries." Ohio's workers' compensation system is a no-fault system. Workers' compensation benefits are "neither an award of damages nor the imposition of a penalty. [The workers' compensation section] recognizes the fact that the risk of injury or death

is an incident of employment in industry * * *." *State ex rel. Crawford v. Indus. Comm.*, 110 Ohio St. 271, 275, 143 N.E. 574 (1924).

{¶ 24} Ohio's workers' compensation system is a system of mutual compromise. *Blankenship v. Cincinnati Milacron Chems. Inc.*, 69 Ohio St.2d 608, 614, 433 N.E.2d 572 (1982). The compromise that employers make for immunity from suit is their payment of premiums into the state insurance fund. R.C. 4123.74 and 4123.35. The compromise for employees is their relinquishment of common-law tort claims in exchange for the right to be compensated for loss sustained on account of the injury. R.C. 4123.54.

{¶ 25} In Ohio, employees are not entitled to compensation for loss if the industrial injury was proximately caused by the employee's being intoxicated or under the influence of illegal substances. R.C. 4123.54(A)(2). Further, R.C. 4123.54(B) creates a rebuttable presumption that a claimant's being intoxicated or under the influence of drugs was the proximate cause of the injury. It is important to reiterate that in this case, Pallet concedes that Cordell's marijuana use had nothing to do with his injury. Accordingly, those statutes are not at issue in this case.

{¶ 26} R.C. 4123.56(A) provides that employees shall receive a portion of their wages when they are temporarily and totally disabled (TTD payments) as a result of a workplace injury. "[T]he purpose of temporary total disability benefits under R.C. 4123.56 is to compensate for loss of earnings * * *." *State ex rel. Ramirez v. Indus. Comm.*, 69 Ohio St.2d 630, 634, 433 N.E.2d 586 (1982). TTD payments cease when the employee returns to work, when the employee's physician releases the employee to return to his former position of employment, when work within the physical capabilities of the employee is made available to the employee by the employer or another employer, or when the employee has reached maximum medical improvement. R.C. 4123.56(A).

**{¶ 27}** In addition, this court has consistently held that when a claimant has left a former position of employment and his leaving was not due to a work-related injury, the claimant has voluntarily abandoned the workplace and TTD benefits may properly be denied. *State ex rel. Rockwell Internatl. v. Indus. Comm.*, 40 Ohio St.3d 44, 46, 531 N.E.2d 678 (1988). The rationale supporting the voluntary-abandonment doctrine is that when an employee has taken an action that would preclude his returning to employment, the employee is not entitled to TTD payments, since it is the action of the employee rather than the industrial injury that caused the loss of wages. *State ex rel. McCoy v. Dedicated Transport, Inc.*, 97 Ohio St.3d 25, 2002-Ohio-5305, 776 N.E.2d 51, ¶ 38.

**{¶ 28}** Determining whether or not an employee voluntarily abandoned employment becomes more complicated in the context of termination. In *State ex rel. Louisiana-Pacific Corp. v. Indus. Comm.*, 72 Ohio St.3d 401, 650 N.E.2d 469 (1995), an employee was fired when he failed to appear for work after he was released by his physician to return to work. The commission granted TTD payments, and the court of appeals declined to disturb the commission's order. This court reversed the court of appeals and held that the employee had voluntarily abandoned his employment and was ineligible for TTD payments because he had been fired for violating a written work rule. The court established the following three criteria for determining whether termination for violating a work rule equates to voluntary abandonment: (1) a written work rule clearly defined the prohibited conduct, (2) prior to the claimant's violating the rule, the prohibited conduct had been defined as a dischargeable offense, and (3) the rule was known or should have been known by the employee. *Id.* at 403.

**{¶ 29}** In *Pretty Prods.*, 77 Ohio St.3d 5, 670 N.E.2d 466, an employee was certified to return to work on March 1, 1991; however, she failed to do so on that day or the two work days following. As a result, she was terminated. The commission ordered TTD benefits to continue after the termination, and the court

of appeals refused to disturb the commission's order. This court reversed the court of appeals and remanded the cause to the commission because it was unclear from the commission's order whether the employee's unexcused absences, which resulted in her termination, were due to her injury. *Id.* at 7-8. In *Pretty Prods.,* we affirmed our prior holding that " '[a] claimant can abandon a former position or remove himself or herself from the workforce only if he or she has the physical capacity for employment at the time of the abandonment or removal.' " *Id.* at 7, quoting *State ex rel. Brown v. Indus. Comm.*, 68 Ohio St.3d 45, 48, 623 N.E.2d 55 (1993). The need to investigate the character of a claimant's departure is eliminated when the claimant can show that he was disabled when the separation occurred. *Id.* at 7.

{¶ 30} In *Reitter Stucco*, 117 Ohio St.3d 71, 2008-Ohio-499, 881 N.E.2d 861, this court made clear that *Pretty Prods.* and *Louisiana-Pacific* are not mutually exclusive. *Reitter Stucco* at ¶ 11. *Reitter Stucco*, upheld TTD benefits for an employee who was terminated after his injury for comments he made about the company's president. There was no dispute that the claimant was medically incapable of returning to work when he was terminated. This court held that even if a termination satisfies all three parts of the *Louisiana-Pacific* criteria for voluntary abandonment, eligibility for TTD benefits remains if the employee was still disabled at the time the discharge occurred. That is the situation in the case before us.

{¶ 31} In *Gross II,* 115 Ohio St.3d 249, 2007-Ohio-4916, 874 N.E.2d 1162, we held that pursuant to statute, workers' compensation benefits may not be denied on the basis of fault. *Id.* at ¶ 22, citing R.C. 4123.54(A) and *Van Fossen v. Babcock & Wilcox Co.*, 36 Ohio St.3d 100, 110, 522 N.E.2d 489 (1988).

{¶ 32} In *Gross II,* an employee was injured when, in defiance of a workplace-safety rule and repeated warnings, he placed water in a pressurized deep fryer, heated the fryer, and then opened the lid. As a result of his violation of the

rule, he was terminated. The termination letter sent to the employee by the employer said that it was the violation of the work rule that resulted in his injury that triggered the investigation and his subsequent termination. Because of this, this court concluded that his discharge was related to his workplace injury. Accordingly, this court found that for purposes of TTD benefits, the employee's termination did not equate to voluntary abandonment.

{¶ 33} In *Gross II*, we observed that the voluntary-abandonment doctrine has been applied only in postinjury circumstances, when the employee, "by his or her own volition, severed the causal connection between the injury and loss of earnings that justified his or her TTD benefits." *Id.* at ¶ 19. And we recognized that the distinctions between voluntary and involuntary are fact-intensive. However, for purposes of TTD benefits, if the claimant's termination is causally related to his injury, the termination is not voluntary and should not preclude the claimant's eligibility for TTD benefits. *Id.* at ¶ 23, citing *Rockwell*, 40 Ohio St.3d at 46, 531 N.E.2d 678, and *McCoy*, 97 Ohio St.3d 25, 2002-Ohio-5305, 776 N.E.2d 51. In *State ex rel. Haddox v. Indus. Comm.*, 135 Ohio St.3d 307, 2013-Ohio-794, 986 N.E.2d 939, this court followed *Gross II,* and the lead opinion reiterated that the underlying issue in a voluntary-abandonment case is whether the injury or the termination is the cause of the loss of earnings. *Haddox* at ¶ 27 (lead opinion), citing *Gross II* at ¶ 23.

{¶ 34} Applying the relevant statutes and precedents from this court to the facts of this case, Cordell is entitled to TTD benefits. There is no dispute that Cordell was injured while working for Pallet. Cordell's use of marijuana was not the proximate cause of his injury. When Cordell was terminated by Pallet, he had not returned to work, he had not been released by his doctor to return to work, he had not reached maximum medical improvement, and he was physically incapable of returning to work. Accordingly, under R.C. 4123.54 and 4123.56, Cordell was entitled to TTD benefits.

**{¶ 35}** Next, we apply the relevant case law of this court to the facts of this case to determine whether his termination equated to voluntary abandonment. At the outset, we recognize that one of the claimants in *McCoy* was an employee who tested positive for cocaine the day after his injury, when he was getting medical treatment. It is not clear from our opinion in that case whether the employee was under the influence of cocaine while he was on the job or whether his cocaine use was the proximate cause of his injury.[1] Unlike in this case, the legal issue in *McCoy* was not whether the employee had voluntarily abandoned his employment. In *McCoy*, the claimants conceded that they were fired under circumstances that amounted to a voluntary abandonment, *id*. at ¶ 9, so that issue was not before us. Instead, this court clarified that an employee who voluntarily abandons employment or is fired under circumstances that amount to voluntary abandonment will be eligible to receive TTD benefits under R.C. 4123.56 if he or she reenters the workforce and due to the original injury, becomes temporarily and totally disabled. *McCoy* at syllabus.

**{¶ 36}** This case is about termination for violation of a work rule when the violation occurs before the injury and is discovered as a result of the injury. *Gross II* and *Reitter Stucco* resolve the legal issue in this case. As in *Gross II,* Cordell's injury resulted in the discovery of his work-rule violation. As in *Reitter Stucco*, Cordell was medically incapable of returning to work when he was terminated. Accordingly, Cordell's termination did not constitute voluntary abandonment. To be clear, Pallet had the right to terminate Cordell for violating one of its work rules. But the fact that Pallet had the right to fire Cordell does not change the facts that Cordell was injured in the course and scope of his employment and that at the time of his termination, he was temporarily and totally disabled.

---

[1] Likewise, because the employee was not tested for drugs until the day after he was injured, it is unclear whether his drug use occurred prior to or following his injury.

{¶ 37} The commission's proposition that reliance on *Gross II* to support TTD compensation in this case creates bad public policy that rewards illegal behavior is an argument that is properly addressed to the Ohio General Assembly. Workers' compensation is not a reward; it is compensation to cover medical treatment and to replace lost wages for workers injured in the workplace. Likewise it guarantees that employers have immunity from negligence actions brought by workers injured in the workplace. Ohio's workers' compensation system is a creature of statute and is designed to operate without regard to fault on the part of the employee or the employer. The Ohio General Assembly expressly excludes workers' compensation benefits for injuries that are the result of the employee's being under the influence of marijuana. R.C. 4123.54. Again, this is not a case where intoxication or drug use caused the workplace injury.

{¶ 38} We are not persuaded that Cordell's work-rule violation prior to his injury severed his employment with Pallet for purposes of Cordell's entitlement to TTD benefits. It is irrelevant to the legal dispute in this case that Cordell would have been fired if Pallet had subjected him to a random drug test prior to his workplace injury. Pallet did not do so. Here, Cordell was injured at work, that injury rendered him unable to return to work and caused him to be without wages. The causal connection between Cordell's workplace injury and workers' compensation could have been broken if Cordell was actually impaired at the time of the injury. Pallet has not at any time asserted that Cordell was intoxicated or impaired at the time of the injury and has not asserted that R.C. 4123.54(A)(2) or (B) is applicable here.

{¶ 39} Our result today is consistent with the compromise between employees and employers that is the foundation of Ohio's Workers' Compensation Act. Denial of statutory TTD benefits to an injured employee who was fired after an injury for conduct that occurred prior to the injury would encourage employers to investigate injured employees' preinjury conduct for any dischargeable offenses

and would undermine the core principles of workers' compensation law and increase litigation in the state. This is a policy decision that should be made by the Ohio General Assembly, not by this court.

### Conclusion

{¶ 40} Ohio's system of workers' compensation is a no-fault system that is the result of compromise between employers and employees. Pursuant to R.C. 4123.54 and 4123.56 and consistent with our decisions in *Gross II* and *Reitter Stucco,* we hold that when an employee is terminated after a workplace injury for conduct prior to and unrelated to the workplace injury, his termination does not amount to a voluntary abandonment of employment for purposes of TTD compensation when (1) the discovery of the dischargeable offense occurred because of the injury and (2) at the time of the termination, the employee was medically incapable of returning to work as a result of the workplace injury.

Judgment affirmed.

PFEIFER, LANZINGER, and FRENCH, JJ., concur.

O'CONNOR, C.J., concurs in judgment only.

O'DONNELL, J., dissents, with an opinion.

KENNEDY, J., dissents, with an opinion.

_____

**O'DONNELL, J., dissenting.**

{¶ 41} Respectfully, I dissent.

{¶ 42} In my view, James Cordell voluntarily abandoned his employment with Pallet Companies, Inc., when he used an illegal controlled substance in violation of a drug free workplace policy, and therefore, he is not entitled to temporary total disability compensation for unrelated workplace injuries he sustained after he violated the drug free policy.

{¶ 43} Temporary total disability ("TTD") compensation "is intended to compensate an injured worker who is temporarily unable to return to the duties of

his or her former position of employment as a result of a workplace injury." *State ex rel. Hildebrand v. Wingate Transport, Inc.*, 141 Ohio St.3d 533, 2015-Ohio-167, 26 N.E.3d 798, ¶ 13. In *State ex rel. Gross v. Indus. Comm.*, 115 Ohio St.3d 249, 2007-Ohio-4916, 874 N.E.2d 1162 ("*Gross II*"), this court explained:

> To be eligible for TTD compensation, "the claimant must show not only that he or she lacks the medical capability of returning to the former position of employment but that a cause-and-effect relationship exists between the industrial injury and an actual loss of earnings. In other words, it must appear that, *but for the industrial injury*, the claimant would be gainfully employed.

(Emphasis added.) *Id.* at ¶ 15, quoting *State ex rel. McCoy v. Dedicated Transport, Inc.*, 97 Ohio St.3d 25, 2002-Ohio-5305, 776 N.E.2d 51, ¶ 35.

**{¶ 44}** "An employee who voluntarily abandons his or her employment *for reasons not related to the industrial injury* cannot receive [TTD] compensation." (Emphasis added.) *State ex rel. Robinson v. Indus. Comm.*, 138 Ohio St.3d 471, 2014-Ohio-546, 8 N.E.3d 883, ¶ 12. Voluntariness of termination "can be imputed to a claimant's misconduct only when the misconduct arises from a violation of a written work rule that (1) clearly defined the prohibited conduct, (2) identified the misconduct as a dischargeable offense, and (3) was known or should have been known to the employee." *State ex rel. Brown v. Hoover Universal, Inc.*, 132 Ohio St.3d 520, 2012-Ohio-3895, 974 N.E.2d 1198, ¶ 1, citing *State ex rel. Louisiana-Pacific Corp. v. Indus. Comm.*, 72 Ohio St.3d 401, 403, 650 N.E.2d 469 (1995). Furthermore, "a claimant can abandon a former position * * * only if he or she has the physical capacity for employment at the time of the abandonment." *State ex rel. Brown v. Indus. Comm.*, 68 Ohio St.3d 45, 48, 623 N.E.2d 55 (1993).

**{¶ 45}** The majority's reliance on the holding in *State ex rel. Reitter Stucco, Inc. v. Indus. Comm.*, 117 Ohio St.3d 71, 2008-Ohio-499, 881 N.E.2d 861, to the effect that even if a termination satisfies the criteria for voluntary abandonment, "eligibility for TTD benefits remains if the employee was still disabled at the time the discharge occurred" is misplaced. Majority opinion at ¶ 30. *Reitter Stucco* relied on this court's decision in *State ex rel. Pretty Prods., Inc. v. Indus. Comm.*, 77 Ohio St.3d 5, 670 N.E.2d 466 (1996) to formulate its holding. However, in both *Reitter Stucco and Pretty Prods.*, the employee's misconduct and discharge occurred after the injury, so this court did not consider what impact a discharge caused by preinjury misconduct has on TTD compensation eligibility.

**{¶ 46}** The majority's reliance on *Gross II* is also misplaced. In that case, a KFC employee sustained injury when he placed water in a pressurized deep fryer to clean it, heated the closed fryer, and then opened the lid. Following an investigation into the incident, KFC determined the employee violated a workplace safety rule, ignored repeated verbal warnings, and it terminated him. Subsequently, the Industrial Commission terminated the employee's TTD benefits on the basis of voluntary abandonment of employment, and the Tenth District Court of Appeals granted a writ of mandamus ordering the commission to reinstate those benefits.

**{¶ 47}** In affirming, this court observed that the doctrine of voluntary abandonment "has never been applied to preinjury conduct or conduct contemporaneous with the injury." *Gross II* at ¶ 19. We explained that the "no-fault nature of our workers' compensation scheme is a statutory mandate" and benefits "may not be denied on the basis of fault to a claimant who was injured in the course and scope of employment." *Id.* at ¶ 22. We further recognized that " 'voluntary departure from the former position can preclude eligibility for TTD compensation only so long as it operates to sever the causal connection between the claimant's industrial injury and the claimant's actual wage loss.' " *Id.* at ¶ 16, quoting *McCoy*, 97 Ohio St.3d 25, 2002-Ohio-5305, 776 N.E.2d 51, at ¶ 38. This

court agreed with the appellate court that the termination of the employee was causally related to his injury because according to the termination letter, it was the "latest violation [of a workplace rule] *resulting in injury* that triggered KFC's investigation and subsequent termination," and thus, we held that the termination was involuntary. (Emphasis added.) *Id.* at ¶ 24.

**{¶ 48}** Our holding in *Gross II* was not controlled by the timing of the employee's misconduct; rather, we based our holding on the fact that the same misconduct caused both the injury and the termination. Under these circumstances, the termination could not sever the causal connection between the injury and actual wage loss, and a finding of voluntary abandonment would, in effect, result in the denial of TTD compensation based on the employee's fault in causing his injury, in contravention of the no-fault nature of the workers' compensation scheme.

**{¶ 49}** In the instant case, it is my view that Cordell abandoned his position with Pallet Companies when he used marijuana in violation of his employer's written Alcohol and Drug-Free Workplace Policy—a policy that prohibits the use of "illegal controlled substances at any time" and further states such use makes an employee "subject to immediate termination." And the record reflects that Cordell knew of this policy because he signed it and agreed to be bound by it the day he was hired, which was over two years before the industrial accident. The drug use in this instance occurred prior to the industrial accident, at a time when Cordell had the physical capacity for employment. And, contrary to our holding in *Gross II*, Cordell's misconduct did not cause both the injury and the termination.

**{¶ 50}** The fact that Pallet Companies did not discover the drug use or discharge Cordell until after he sustained injury is in my view immaterial. Pursuant to the Alcohol and Drug-Free Workplace Policy, drug testing "will be conducted * * * [w]hen an employee is involved at any time directly in an equipment or vehicular work-related accident, or in any unsafe and/or negligent use of Company property." Thus, the majority is incorrect that Cordell's injury resulted in the

discovery of his drug use because the policy mandated that Cordell be drug tested after the accident regardless of whether he sustained injury. Accordingly, it cannot be said that *but for the industrial injury*, Cordell would be gainfully employed because even if he had not been injured, the mandatory postaccident testing would have revealed the marijuana use that prompted his termination.

{¶ 51} Cordell's violation of the drug free workplace policy severed the causal connection between his industrial injury and his actual wage loss. Accordingly, the Industrial Commission lawfully exercised its discretion in denying TTD compensation, and therefore, I would reverse the judgment of the court of appeals.

————————————

**KENNEDY, J., dissenting.**

{¶ 52} Because the majority opinion narrows the circumstances under which the voluntary-abandonment doctrine applies to exclude the situation in which an employee, prior to sustaining a workplace injury, uses an illegal drug in violation of a written drug-free-workplace policy, I dissent. Our precedent establishes that when an employee uses illegal drugs in violation of a written drug-free-workplace policy, that misconduct severs the causal connection between the injury and the wage loss, precluding temporary-total-disability ("TTD") compensation. *See State ex rel. Cobb v. Indus. Comm.,* 88 Ohio St.3d 54, 723 N.E.2d 573 (2000), and *State ex rel. McCoy v. Dedicated Transport, Inc.*, 97 Ohio St.3d 25, 2002-Ohio-5305, 776 N.E.2d 51. Therefore, I would reverse the judgment of the Tenth District Court of Appeals and deny the writ of mandamus against the Ohio Industrial Commission.

{¶ 53} The majority relies on *State ex rel. Gross v. Indus. Comm.*, 115 Ohio St.3d 249, 2007-Ohio-4916, 874 N.E.2d 1162 ("*Gross II*"), and *State ex rel. Reitter Stucco, Inc. v. Indus. Comm.*, 117 Ohio St.3d 71, 2008-Ohio-499, 881 N.E.2d 861, to support its conclusion that Cordell did not voluntarily abandon his employment when he chose to use marijuana prior to his injury, because his marijuana use was

18

discovered after his injury. Majority opinion at ¶ 22. However, this expansion of our holdings in *Gross II, State ex rel. Upton v. Indus. Comm.*, 119 Ohio St.3d 461, 2008-Ohio-4758, 895 N.E.2d 161, and *State ex rel. Haddox v. Indus. Comm.*, 135 Ohio St.3d 307, 2013-Ohio-794, 986 N.E.2d 939, to further limit the application of the voluntary-abandonment doctrine is unwarranted.

**{¶ 54}** One general principle to keep in mind when analyzing workers' compensation cases is that "workers' compensation cases are, to a large extent, very fact specific. [Therefore], no one test or analysis can be said to apply to each and every factual possibility." *Fisher v. Mayfield*, 49 Ohio St.3d 275, 280, 551 N.E.2d 1271 (1990). Therefore, the *Gross II* line of cases should be applied only in cases with similar facts, i.e., cases in which the employee is fired for violating a workplace-safety rule when the misconduct causes his industrial injury. A review of the historical development of the voluntary-abandonment doctrine reveals the two-step analysis the majority should have undertaken here.

**{¶ 55}** This court has recognized that under R.C. 4123.56, TTD "is defined as a disability which prevents a worker from returning to his former position of employment." *State ex rel. Ramirez v. Indus. Comm.*, 69 Ohio St.2d 630, 433 N.E.2d 586 (1982), syllabus. We first applied the concept of voluntary abandonment in relation to TTD in *State ex rel. Ashcraft v. Indus. Comm.*, 34 Ohio St.3d 42, 517 N.E.2d 533 (1987).

**{¶ 56}** In *Ashcraft*, an injured worker who had been receiving TTD compensation was incarcerated. To answer the question whether that incarcerated injured worker was entitled to continue receiving TTD compensation, this court examined a decision of the Tenth District that concluded:

[W]here the employee has taken action that would preclude his returning to his former position of employment, even if he were able to do so, he is not entitled to continued temporary total disability

benefits since it is his own action, rather than the industrial injury, which prevents his returning to such former position of employment.

*State ex rel. Jones & Laughlin Steel Corp. v. Indus. Comm.*, 29 Ohio App.3d 145, 147, 504 N.E.2d 451 (10th Dist.1985). Relying on the reasoning in *Jones & Laughlin*, we held that TTD compensation was not payable to the injured worker in *Ashcraft*:

> While a prisoner's incarceration would not normally be considered a "voluntary" act, one may be presumed to tacitly accept the consequences of his voluntary acts. When a person chooses to violate the law, he, by his own action, subjects himself to the punishment which the state has prescribed for that act.
>
> Based on the foregoing, we find that relator's incarceration constitutes a factor which, independently of his previously recognized work-related injury, would preclude his receipt of temporary total disability compensation.

*Ashcraft* at 44-45.[2]

{¶ 57} This court refined the holding in *Ashcraft* in *State ex rel. Rockwell Internatl. v. Indus. Comm.*, 40 Ohio St.3d 44, 531 N.E.2d 678 (1988). In *Rockwell*, an injured worker retired as a result of his injury. This court reaffirmed that voluntary abandonment of the former position of employment can preclude TTD compensation. However, we made clear that the analysis must look beyond the

---

[2] While *Ashcraft* was pending in this court, the General Assembly enacted a provision that prohibits the payment of any workers' compensation benefits when a claimant is confined in any state or federal correctional institution. *See* R.C. 4123.54(J).

mere voluntary nature of a claimant's departure and must consider whether there is a causal connection between the departure and the injury. "[W]here a claimant's retirement is causally related to his injury, the retirement is not 'voluntary' so as to preclude eligibility for temporary total disability compensation." *Id*. at 46.

{¶ 58} After *Rockwell*, we considered whether the doctrine of voluntary abandonment could be applied to a termination of employment for violating a written absence policy in *State ex rel. Louisiana-Pacific Corp. v. Indus. Comm.*, 72 Ohio St.3d 401, 650 N.E.2d 469 (1995). Relying on *Ashcraft* and *State ex rel. Watts v. Schottenstein Stores Corp.,* 68 Ohio St.3d 118, 623 N.E.2d 1202 (1993), the court established a three-part test to determine whether a termination was voluntary. We held that a firing equates to a voluntary abandonment when the employee violated a written work rule or policy that "(1) clearly defined the prohibited conduct, (2) had been previously identified by the employer as a dischargeable offense, and (3) was known or should have been known to the employee." *Louisiana-Pacific* at 403.

{¶ 59} Following *Louisiana-Pacific*, the court urged caution in the application of the rule enunciated in *Louisiana-Pacific*, recognizing the "great potential for abuse in allowing a simple allegation of misconduct to preclude temporary total disability compensation." *State ex rel. Smith v. Superior's Brand Meats, Inc.*, 76 Ohio St.3d 408, 411, 667 N.E.2d 1217 (1996). Therefore, in these cases, the court must "carefully examine the totality of the circumstances." *Id*.

{¶ 60} In *Cobb*, this court addressed for the first time the issue whether an employee who was terminated for violating a drug-free-workplace policy had voluntarily abandoned employment. 88 Ohio St.3d 54, 723 N.E.2d 573. The claimant in *Cobb* attempted to have TTD compensation reinstated after his termination. Relying on *Rockwell*, *Watts*, and *Louisiana-Pacific,* this court held that the claimant had voluntarily abandoned his employment "when he chose to use illegal drugs." *Cobb* at 57.

{¶ 61} In *McCoy*, this court again considered whether illegal drug use in violation of a workplace policy that resulted in the firing of the claimant constituted voluntary abandonment. 97 Ohio St.3d 25, 2002-Ohio-5305, 776 N.E.2d 51. One of the TTD claimants in *McCoy* suffered a hernia as a result of his work. The next day, while being treated for the injury at the hospital, the claimant was drug tested, and when the employer learned that the claimant tested positive for cocaine, he was fired. This court "reexamine[d] the proposition that eligibility for TTD compensation depends generally upon whether the former position of employment would still be available to the claimant when his or her industrial injury stabilizes." *Id.* at ¶ 22. The court focused on the proximate cause of the loss of wages and noted that a "voluntary departure" can preclude eligibility for TTD compensation only if it "operates to sever the causal connection between the claimant's industrial injury and the claimant's actual wage loss." *Id*. at ¶ 38.

{¶ 62} This court refined the application of the three-part *Louisiana-Pacific* test in *Reitter Stucco*, 117 Ohio St.3d 71, 2008-Ohio-499, 881 N.E.2d 861. In *Reitter Stucco*, we held that "even if a termination satisfies all three *Louisiana-Pacific* criteria for being a voluntary termination, eligibility for temporary total disability compensation remains if the claimant was still disabled at the time the discharge occurred." *Id.* at ¶ 10; *see also State ex rel. Pretty Prods., Inc. v. Indus. Comm*., 77 Ohio St.3d 5, 7, 670 N.E.2d 466 (1996) (the timing of separation is crucial because abandonment can occur only if claimant has physical capacity for employment at time of abandonment or removal), citing *State ex rel. Brown v. Indus. Comm*., 68 Ohio St.3d 45, 48, 623 N.E.2d 55 (1993).

{¶ 63} In *Reitter Stucco*, the claimant injured his back at work in 2003. After surgery and while he was rehabilitating, the claimant made comments about the company's president, for which he was fired in April 2005. This court held that the claimant was entitled to continue receiving TTD compensation and that the determinative fact was that the claimant was "medically incapable of returning to

his former position of employment at the time of his discharge." *Reitter Stucco* at ¶ 12.

{¶ 64} In recent cases interpreting the voluntary-abandonment doctrine, we have held that an employee's discharge for violating a workplace-safety rule that was causally related to the injury did not constitute a voluntary abandonment. *Gross II*, 115 Ohio St.3d 249, 2007-Ohio-4916, 874 N.E.2d 1162, ¶ 23-24; *Upton*, 119 Ohio St.3d 461, 2008-Ohio-4758, 895 N.E.2d 161, ¶ 8; *Haddox*, 135 Ohio St.3d 307, 2013-Ohio-794, 986 N.E.2d 939, ¶ 34.

{¶ 65} It is clear from our precedent that when determining whether an employee has voluntarily abandoned employment by violating a workplace rule, a two-step analysis is required. First, using the three-part test of *Louisiana-Pacific,* we must determine whether the employer had a clearly defined workplace rule that prohibited the conduct as a dischargeable offense and that the employee knew of or should have known about the rule. *Louisiana-Pacific*, 72 Ohio St.3d at 403, 650 N.E.2d 469. Second, we must examine the timing of the misconduct pursuant to *Reitter Stucco*. *Id*., 117 Ohio St.3d 71, 2008-Ohio-499, 881 N.E.2d 861, at ¶ 12.

{¶ 66} Applying the two-step analysis here, there is no dispute that the three-part test of *Louisiana-Pacific* was met. Appellant Pallet Companies, Inc. ("Pallet") had a written drug-free-workplace policy that clearly defined as a dischargeable offense the use of illegal drugs, and Cordell knew or should have known of the policy because he signed and initialed every page of the policy on August 4, 2009. The second step requires us to examine when the alleged abandonment occurred. The timing is important because an employee can abandon employment only when he has the physical capacity for employment. *Pretty Prods.,* 77 Ohio St.3d at 7, 670 N.E.2d 466.

{¶ 67} The majority focuses on the timing of the *discovery* of the misconduct, but it is the timing of the misconduct itself that is relevant because it was the misconduct that resulted in the termination. And at the time of the

misconduct, Cordell had the physical capacity to perform his employment. Moreover, contrary to the majority's conclusion, this court's determination in *McCoy*, 97 Ohio St.3d 25, 2002-Ohio-5305, 776 N.E.2d 51, should control. A postinjury positive drug test makes the employee's voluntary misconduct, not his injury, the proximate cause of his loss of wages from his former employer. *Id.*

{¶ 68} The majority attempts to distinguish *McCoy* by stating, "[T]he legal issue in *McCoy* was not whether the employee had voluntarily abandoned his employment." Majority opinion at ¶ 35. While the majority is correct that the issue in *McCoy* was whether an employee who reenters the workforce but due to an injury from a prior job becomes temporarily and totally disabled while working at the new job is eligible to receive TTD compensation, the court recognized that its holding applied to "a claimant who *voluntarily abandoned* his or her former position of employment or who was fired under circumstances that amount to a *voluntary abandonment* of the former position." (Emphasis added.) *McCoy* at ¶ 39. As a necessary part of its analysis in the case, the *McCoy* court had to first determine that the employee had voluntarily abandoned his prior employment by using cocaine. *McCoy* at ¶ 43. Therefore, the reasoning in *McCoy* should be applied in this case.

{¶ 69} Moreover, the majority's focus on the timing of the discovery of the misconduct is misplaced. The majority incorrectly views the positive drug test as the offense for which Cordell was terminated and holds that because the testing occurred after he was injured, Cordell cannot lose his TTD compensation, citing *Gross II* and *Reitter Stucco*. Majority opinion at ¶ 36. I disagree with that analysis. Cordell's preinjury use of marijuana was the offense for which he was terminated. The drug test was merely the means employed to detect the violation of the written drug-free-workplace policy.

{¶ 70} Here, the connection between the industrial injury and the loss of wages was severed by Cordell's preinjury use of marijuana. Because Cordell

violated his employer's drug-free-workplace policy when he used an "illegal controlled substance," he severed his employment at the time of use. The discovery of the use of the illegal substance was not a violation of company policy. Pallet's policy also clearly states that its employees will be drug tested when they are "involved * * * in an equipment or vehicular work-related accident." The policy also makes clear that the discipline for violating the illegal-substance policy is "immediate termination." Therefore, Cordell voluntarily abandoned his employment prior to his injury because he knew that his use of marijuana would result in his termination if the use was discovered.

{¶ 71} When the two-step analysis dictated by *Louisiana-Pacific* and *Reitter Stucco* is applied to the facts of this case, it is clear that Cordell voluntarily abandoned his employment when he used an illegal substance prior to sustaining his workplace injury. Therefore, I dissent and would reverse the judgment of the Tenth District Court of Appeals and deny the writ of mandamus against the Ohio Industrial Commission.

_____

Craigg E. Gould, for appellee.

Dinsmore & Shohl, L.L.P., Christen S. Hignett, and Michael L. Squillace, for appellant Pallet Companies, Inc.

Michael DeWine, Attorney General, and Lisa R. Miller, Assistant Attorney General, for appellant Industrial Commission.

Philip J. Fulton Law Office and Chelsea Fulton Rubin, urging affirmance for amici curiae, Ohio Association of Claimants' Counsel and Ohio Association for Justice.

_____