O’Donnell, J.,
dissenting.
{¶ 41} Respectfully, I dissent.
*493 {¶ 42} In my view, James Cordell voluntarily abandoned his employment with Pallet Companies, Inc., when he used an illegal controlled substance in violation of a drug free workplace policy, and therefore, he is not entitled to temporary total disability compensation for unrelated workplace injuries he sustained after he violated the drug free policy.
{¶ 43} Temporary total disability (“TTD”) compensation “is intended to compensate an injured worker who is temporarily unable to return to the duties of his or her former position of employment as a result of a workplace injury.” State ex rel. Hildebrand v. Wingate Transport, Inc., 141 Ohio St.3d 533, 2015-Ohio-167, 26 N.E.3d 798, ¶ 13. In State ex rel. Gross v. Indus. Comm., 115 Ohio St.3d 249, 2007-Ohio-4916, 874 N.E.2d 1162 (“Gross II ”), this court explained:
To be eligible for TTD compensation, “the claimant must show not only that he or she lacks the medical capability of returning to the former position of employment but that a cause-and-effect relationship exists between the industrial injury and an actual loss of earnings. In other words, it must appear that, but for the industrial injury, the claimant would be gainfully employed.”
(Emphasis added.) Id. at ¶ 15, quoting State ex rel. McCoy v. Dedicated Transport, Inc., 97 Ohio St.3d 25, 2002-Ohio-5305, 776 N.E.2d 51, ¶ 35.
{¶ 44} “An employee who voluntarily abandons his or her employment for reasons not related to the industrial injury cannot receive [TTD] compensation.” (Emphasis added.) State ex rel. Robinson v. Indus. Comm., 138 Ohio St.3d 471, 2014-Ohio-546, 8 N.E.3d 883, ¶ 12. Voluntariness of termination “can be imputed to a claimant’s misconduct only when the misconduct arises from a violation of a written work rule that (1) clearly defined the prohibited conduct, (2) identified the misconduct as a dischargeable offense, and (3) was known or should have been known to the employee.” State ex rel. Brown v. Hoover Universal, Inc., 132 Ohio St.3d 520, 2012-Ohio-3895, 974 N.E.2d 1198, ¶ 1, citing State ex rel. Louisiana-Pacific Corp. v. Indus. Comm., 72 Ohio St.3d 401, 403, 650 N.E.2d 469 (1995). Furthermore, “a claimant can abandon a former position * * * only if he or she has the physical capacity for employment at the time of the abandonment.” State ex rel. Brown v. Indus. Comm., 68 Ohio St.3d 45, 48, 623 N.E.2d 55 (1993).
{¶ 45} The majority’s reliance on the holding in State ex rel. Reitter Stucco, Inc. v. Indus. Comm., 117 Ohio St.3d 71, 2008-Ohio-499, 881 N.E.2d 861, to the effect that even if a termination satisfies the criteria for voluntary abandonment, “eligibility for TTD benefits remains if the employee was still disabled at the time the discharge occurred” is misplaced. Majority opinion at ¶ 30. Reitter Stucco relied on this court’s decision in State ex rel. Pretty Prods., Inc. v. Indus. Comm., *494 77 Ohio St.3d 5, 670 N.E.2d 466 (1996), to formulate its holding. However, in both Reitter Stucco and Pretty Prods., the employee’s misconduct and discharge occurred after the injury, so this court did not consider what impact a discharge caused by preinjury misconduct has on TTD compensation eligibility.
{¶ 46} The majority’s reliance on Gross II is also misplaced. In that case, a KFC employee sustained injury when he placed water in a pressurized deep fryer to clean it, heated the closed fryer, and then opened the lid. Following an investigation into the incident, KFC determined the employee violated a workplace safety rule and ignored repeated verbal warnings, and it terminated him. Subsequently, the Industrial Commission terminated the employee’s TTD benefits on the basis of voluntary abandonment of employment, and the Tenth District Court of Appeals granted a writ of mandamus ordering the commission to reinstate those benefits.
{¶ 47} In affirming, this court observed that the doctrine of voluntary abandonment “has never been applied to preinjury conduct or conduct contemporaneous with the injury.” Gross II, 115 Ohio St.3d 249, 2007-Ohio-4916, 874 N.E.2d 1162, at ¶ 19. We explained that the “no-fault nature of our workers’ compensation scheme is a statutory mandate” and benefits “may not be denied on the basis of fault to a claimant who was injured in the course and scope of employment.” Id. at ¶ 22. We further recognized that “ ‘voluntary departure from the former position can preclude eligibility for TTD compensation only so long as it operates to sever the causal connection between the claimant’s industrial injury and the claimant’s actual wage loss.’ ” Id. at ¶ 16, quoting McCoy, 97 Ohio St.3d 25, 2002-Ohio-5305, 776 N.E.2d 51, at ¶ 38. This court agreed with the appellate court that the termination of the employee was causally related to his injury because according to the termination letter, it was the “latest violation [of a workplace rule] resulting in injury that triggered KFC’s investigation and subsequent termination,” and thus, we held that the termination was involuntary. (Emphasis added.) Id. at ¶ 24.
{¶ 48} Our holding in Gross II was not controlled by the timing of the employee’s misconduct; rather, we based our holding on the fact that the same misconduct caused both the injury and the termination. Under these circumstances, the termination could not sever the causal connection between the injury and actual wage loss, and a finding of voluntary abandonment would, in effect, result in the denial of TTD compensation based on the employee’s fault in causing his injury, in contravention of the no-fault nature of the workers’ compensation scheme.
{¶ 49} In the instant case, it is my view that Cordell abandoned his position with Pallet Companies when he used marijuana in violation of his employer’s written Alcohol and Drug-Free Workplace Policy—a policy that prohibits the use of “illegal controlled substances at any time” and further states that such use *495 makes an employee “subject to immediate termination.” And the record reflects that Cordell knew of this policy because he signed it and agreed to be bound by it the day he was hired, which was over two years before the industrial accident. The drug use in this instance occurred prior to the industrial accident, at a time when Cordell had the physical capacity for employment. And, contrary to our finding in Gross II, Cordell’s misconduct did not cause both the injury and the termination.
{¶ 50} The fact that Pallet Companies did not discover the drug use or discharge Cordell until after he sustained injury is in my view immaterial. Pursuant to the Alcohol and Drug-Free Workplace Policy, drug testing “will be conducted * * * [w]hen an employee is involved at any time directly in an equipment or vehicular work-related accident, or in any unsafe and/or negligent use of Company property.” Thus, the majority is incorrect that Cordell’s injury resulted in the discovery of his drug use because the policy mandated that Cordell be drug tested after the accident regardless of whether he sustained injury. Accordingly, it cannot be said that but for the industrial injury, Cordell would be gainfully employed because even if he had not been injured, the mandatory postaccident testing would have revealed the marijuana use that prompted his termination.
{¶ 51} Cordell’s violation of the drug free workplace policy severed the causal connection between his industrial injury and his actual wage loss. Accordingly, the Industrial Commission lawfully exercised its discretion in denying TTD compensation, and therefore, I would reverse the judgment of the court of appeals.